1

The Honorable Benjamin H. Settle

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

8

AT TACOMA

9

BEVERLY J. KNODEL,                          )
                                            )
10                 Plaintiff,                )   No. 10-CV-05292 BHS
                                            )
11        v.                                 )   DECLARATION OF CHERYL
                                            )   RICHARDS IN SUPPORT OF
12   PROVIDENCE HEALTH AND SERVICES,        )   DEFENDANT'S MOTION FOR
     DBA: PROVIDENCE SOUNDHOMECARE          )   SUMMARY JUDGMENT
13   AND HOSPICE,                            )
                                            )   NOTE ON MOTION CALENDAR:
14                 Defendant.                )   Friday, July 8, 2011

15   _____   ***Oral Argument Requested***

16        I, CHERYL RICHARDS, hereby declare as follows:

17        1.      I am over the age of 18 and competent to testify.  I make the statements in this

18   declaration based on my personal knowledge, and if called and sworn as a witness in any

19   proceeding, could and would testify competently thereto.

20        2.      I am a current Human Resources Consultant at Providence SoundHomeCare

21   and Hospice ("PSHCH").  I have held this position for three years.  In this role, I am

22   responsible for overseeing employee relations, labor relations, disciplinary counseling,

     training, and new hire orientation.  My responsibilities with PSHCH also include being a

23   DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
     DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
     (10-CV-05292 BHS) — 1

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

1  custodian of the personnel files and employee records that PSHCH maintains in the ordinary

2  course of its business.

3      3.      PSHCH is part of Providence Health and Services – Washington ("PHS"), a

4  health care ministry sponsored by the Vatican.  PHS is a faith based organization.  Attached

5  hereto as **Exhibit A** is a true and correct copy of PHS's Mission Statement and Core Values.

6  The organization that is now PHS was founded by the Sisters of Providence.  The Sisters of

   Providence are an order of nuns that began in Montreal, Canada.  The Sisters of Providence

7  are overseen by the Catholic Diocese in Montreal.  Prior to January 1, 2010, PHS reported to

8  the Montreal Diocese.  It provided its budget to the Montreal Diocese for approval and

9  consulted the Montreal Diocese on all major decisions.  As of January 1, 2010, the Sisters of

10  Providence transferred its sponsorship of PHS to a new entity by the name of Providence

11  Ministries.  Providence Ministries is composed of five individual members (called Sponsors)

12  who oversee and select the PHS board of directors.  Sponsors are required to be Catholics in

13  good standing and are selected by the Sisters of Providence.  Providence Ministries reports to

14  the Vatican.  It is required to file a yearly report with the Vatican.  The entities that PHS

   operates work with the Diocese in their jurisdictions.

15      4.      PSHCH provides home health and hospice care services for patients in assisted

16  living facilities and private homes.  PSHCH is divided into two departments – Home Health

17  and Hospice.  The Hospice division serves patients who have a life expectancy of less than six

18  months and elect to receive palliative care.  Hospice care focuses on managing physical

19  symptoms and decreasing pain, while also providing emotional and spiritual support to

20  patients and their families.  Each patient is cared for by a team that consists of a combination

21  of registered nurses, associated physicians, social workers, a chaplain, bereavement

22  counselors, home health aides, and other counselors.  Medicare, Medicaid, and private

   insurance cover the cost of Hospice care for patients who meet specific criteria.

23  DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
   (10-CV-05292 BHS) — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 17365772v1 0016924-000146

5.      PSHCH is committed to furthering the mission of PHS in caring for its patients.  Its employees receive information and training regarding its mission statement and core values, which have religious components.  Additionally, Hospice chaplains provide religious and emotional counseling to hospice patients.  PSHCH recognizes that the religious, spiritual, and social needs of patients during the final months of life are often just as important has their medical needs are at this time.

6.      PSHCH currently employs 79 people who work in hospice, 23 of which are Case Managers.  The average age of hospice employees is 50 years old and the average age of Case Managers is 53 years old.

7.      Attached hereto as **Exhibit B** is a true and correct copy of a personnel action request form from Ms. Knodel's personnel file.

8.      Attached hereto as **Exhibit C** is a true and correct copy of a doctor's note from Ms. Knodel's personnel file.

9.      Attached hereto as **Exhibit D** is a true and correct copy of a Leave of Absence Statement from Ms. Knodel's personnel file.  Attached hereto as **Exhibit E** is a true and correct copy of the Certification of Health Care Provider Form, dated November 2008, from Ms. Knodel's personnel file.

10.     Attached hereto as **Exhibit F** is a true and correct copy of a doctor's note from her personnel file, releasing Ms. Knodel to work after her surgery in November 2008.

11.     As part of its regular ebb and flow of employees, PSHCH has hired other nurses since Ms. Knodel's employment was terminated, but Ms. Knodel was not replaced by any particular person.

12.     Attached hereto as **Exhibit G** is a true and correct copy of the Restated Bylaws of PHS, effective December 31, 2009.

DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(10-CV-05292 BHS) — 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

13.     Attached hereto as **Exhibit H** is a true and correct copy of the Restated Articles of Incorporation of PHS, effective December 31, 2009.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

Executed at Olympia, Washington, June 14 , 2011.


By 
   Cheryl Richards

DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(10-CV-05292 BHS) — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 17365772v1 0016924-000146

# Exhibit A



## *The Providence Commitment*

### Mission

As people of Providence,
we reveal God's love for all,
especially the poor and vulnerable,
through our compassionate service.

### Core Values

#### Respect

We welcome the uniqueness and honor the dignity of every person.
We communicate openly and we act with integrity.
We develop the talents and abilities of one another.

#### Compassion

We reach out to people in need and give comfort as Jesus did.
We nurture the spiritual, physical and emotional well-being of one another
and those we serve.
We embrace those who are suffering.

#### Justice

We believe everyone has a right to the basic goods of the earth.
We strive to remove the causes of oppression.
We join with others to work for the common good and to advocate for
social justice.

#### Excellence

We set the highest standards for ourselves and for our ministry.
We strive to transform conditions for a better tomorrow while serving the
needs of today.
We celebrate and encourage the contributions of one another.

#### Stewardship

We believe that everything entrusted to us is for the common good.
We strive to care wisely for our people, our resources and our earth.
We seek simplicity in our lives and in our work.

30

PHS_BK-000567





# Financial *Help* *Available*

If you need help paying your hospital bill, we have financial counselors who can explain your options. We can help determine if you can get financial help from local, state and federal health care programs. And, we can help you apply for our charity care or other discount programs. We can also help arrange a variety of payment plan options.

Any of these options can help if you or a family member is uninsured, or if you have a balance to pay after your insurance company has paid its portion. This would include any amount you owe after payment by government programs such as Medicare or Medicaid.

We want to make sure you receive the health care you need regardless of your ability to pay.

# Our *Mission*

Our mission is to continue the healing ministry of Jesus in the world of today with special concern for those who are poor and vulnerable. Working with others in a spirit of loving service, we strive to meet the health needs of people as they journey through life.

# Serving *All*

At Providence, we provide care to all those in need regardless of their ability to pay. This is an important part of our mission.

31



PHS_BK-000569





If you cannot afford to pay your bill

# Getting
## *Help*

If you need financial help with your bill, please speak with a financial counselor at our hospital. You can meet with a financial counselor in person at the hospital or call 425.261.4002. If you have insurance or are covered under Medicaid or Medicare, please share that information with our financial counselors when you seek care at Providence hospitals. This will help them better assist you.

Account Number _____
Contact Name _____
Contact Phone Number _____

*help*



A caring difference you can feel



A caring difference you can feel

35

PHS_BK-000570

# *The Mission of the Sisters of Providence Health System*

## *Guidelines for Mission Integration*



SISTERS OF
PROVIDENCE
HEALTH SYSTEM
*Serving in the West since 1856*

PHS_BK-000571

*The Mission of the*
*Sisters of Providence Health System*
*Guidelines for Mission Integration*

# Preface

The Sisters of Providence Health System is a ministry inspired by the virtues and values of the women who founded the Sisters of Providence. Mother Emilie Gamelin, Mother Joseph of the Sacred Heart, Mother Bernard Morin each shaped, through her personal life and dedication, the mission to serve needy women, men and children in society. Each in her own time and place was driven by the sense of mission to create a society reflective of the values exemplified and taught by Jesus in the Gospel.

The task of interpreting the mission for our times and of integrating it into all aspects of our life as individuals and organizations continues today. We must continually question what we do, why, and how we do the works that comprise this ministry.

The **Guidelines for Mission Integration** provide a practical resource for living as a mission-focused organization. Centered on the Core Values and Mission Statement, the document provides standards for organizational leadership, responsibility and accountability in the implementation of the mission. They have been written by women and men throughout the organization who know, love and promote the mission. Their content has been drawn from the documents that have guided mission programs in the Sisters of Providence Health System for more than ten years.

These **Guidelines** replace prior mission documents inasmuch as they incorporate the essential elements of the earlier writings.

Let the words that are written here take on true meaning in the lives and actions of all who continually create the mission as a dynamic reality in our time!

February 1994

PHS_BK-000572

*The Mission of the*
*Sisters of Providence Health System*
*Guidelines for Mission Integration*

# Introduction

The women who joined together as the newly-established religious community of the Sisters of Providence in the mid-19th century were people aware of the world, a world far different from the one we live in today. They saw the most vulnerable of society in distress, in need of food, shelter, caring, and comfort. They responded to the needs of others with compassion and courage. Each act they took was imbued with faith in Divine Providence and marked by a commitment to participate in the mission of Jesus.

Over time, the range of works broadened and the territory where Sisters of Providence served expanded. Regardless of the work at hand, whether it was teaching the young or healing the sick, this same sense of mission traversed borders, ministries, and decades. Today, we continue to seek ways to translate the Providence mission and values into action in response to the signs of our times.

This document will be of great practical use in the daily activities of the Providence family. Guidelines are clarified, organizational relationships are defined, values are amplified and the history and development of the Sisters of Providence is outlined. These *Guidelines for Mission Integration* will be especially vital in this time of rapid change in health care.

However, these guidelines encompass more than practicality. In a larger sense, this document reveals the story of who we are in the deepest and fullest sense. We take our identity from the mission and the mission is the cornerstone of all that we do. In reading this document, you will be linked with those who have gone before and those yet to come in fulfilling our mission. These guidelines echo our true identity and will help guide you in your decisions and activities mindful of this story and its seed of purpose. They comprise a living document that invites discussion and dialogue based on the lived experience of all who are part of the Sisters of Providence Health System. The Sponsors and the Board of Directors are pleased to offer their endorsement of these *Guidelines for Mission Integration*.


Kathryn Kurtz, SP
Provincial Superior

Karin Dufault, SP
Chair of the Board

44

PHS_BK-000573

# Table Of Contents

PREFACE

INTRODUCTION

Chapter I:   History, Sponsorship And Mission Of The Sisters Of Providence Health System . . .   1
             Mother Emilie Gamelin  . . . . . . . . . . . . . . . . . . . . . . . .   1
             Mother Bernard Morin  . . . . . . . . . . . . . . . . . . . . . . . .   1
             Mother Joseph Of The Sacred Heart  . . . . . . . . . . . . . . . . . .   2
             Into The 21st Century . . . . . . . . . . . . . . . . . . . . . . . .   2
             Relationship Of Sisters Of Providence Healthcare Institutions To The Church . . . . .   3
             Mission Statement . . . . . . . . . . . . . . . . . . . . . . . .   4

Chapter II:   Core Values Of The Sisters Of Providence Health System . . . . . . . . . . . .   5
              Respect For Dignity Of Persons  . . . . . . . . . . . . . . . . . .   6
              Justice  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   7
              Compassion . . . . . . . . . . . . . . . . . . . . . . . . . .   8
              Excellence . . . . . . . . . . . . . . . . . . . . . . . . . . .   9
              Mission Assessment . . . . . . . . . . . . . . . . . . . . . . .   10

Chapter III:   Staffing For Mission Integration Within Facilities And Regional Offices . . .   13
               Guideline . . . . . . . . . . . . . . . . . . . . . . . . . . .   13
               General Purpose . . . . . . . . . . . . . . . . . . . . . . . .   13
               Specific Duties . . . . . . . . . . . . . . . . . . . . . . . .   13
               Personal Qualifications . . . . . . . . . . . . . . . . . . . . .   15
               Educational Qualifications . . . . . . . . . . . . . . . . . . . .   15
               Experience  . . . . . . . . . . . . . . . . . . . . . . . . . .   15

Chapter IV:   Organizational Relationships  . . . . . . . . . . . . . . . . . .   17
              Planning . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-i
              Marketing/Public Relations . . . . . . . . . . . . . . . . . . . . 18-ii
              Organizational Relationships/Quality Improvement . . . . . . . . . . .   18-iii

Chapter V:   Guidelines For Performance Review And Evaluation Of Mission-Values
             Integration . . . . . . . . . . . . . . . . . . . . . . . .   19

Chapter VI:   Mission Programs And Events  . . . . . . . . . . . . . . . . . .   21
              New Employee Orientation . . . . . . . . . . . . . . . . . . . .   21
              Mission Renewal Program . . . . . . . . . . . . . . . . . . . . .   21
              Missioning Ceremony For New Administrators . . . . . . . . . . . . . .   22
              Annual Missioning Of All Sisters Of Providence Health System Members . . . . .   23

              Supplement:  Orientation
              Employees, Physicians, Board Members . . . . . . . . . . . . . . . . 24-i
              Mission Integration with Boards . . . . . . . . . . . . . . . . . . 24-ii

45

Chapter VII:  Guidelines For Mission Programs In Sisters Of Providence Health System  .  25
          Mission Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25
          Director Of Mission-Values Integration . . . . . . . . . . . . . . . . . . . . .  25
          Mission Council  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

          Supplement:  Mission Integration Review  . . . . . . . . . . . . . . . . . . . 28-i


APPENDICES
     Appendix 1: Organizational Chart — Religious Community
     Appendix 2: Mission Statement Review Process

PHS_BK-000575

*Sisters of Providence Health System*
*"Guidelines For Mission Integration Of The Mission Into The Life And Works*
*Of The Health Care System."*

# Chapter I

# History, Sponsorship And Mission
# Of The Sisters Of Providence Health System

Throughout history, individuals have felt themselves called to lead and serve others in ways that respond to the particular needs of their times. The service that is born of faith in God and love of God's people is offered as an expression of the Creator's action to bring health, hope and healing to those in need. The Sisters of Providence mission has its origins in this vocation.

## *Mother Emilie Gamelin*

In 1843 Mother Emilie Gamelin established a seven-member community of women religious in Montreal, a community which became known as the Sisters of Providence. In 1844 she was elected the first superior of the new community.

Earlier in her life, as a young woman Emilie Gamelin had married, but by the age of 27 she had suffered the death of her husband and three children. She joined the Ladies of Charity, an association for the relief of the poor and committed her life to relieving the suffering of the most afflicted groups in her society: the aging, neglected women, prisoners, persons with mental illness, orphans, and the handicapped. In this ministry, she was inspired by her devotion to Mary Mother of Sorrows, and trust in God's providence that her work would bring healing. When Emilie Gamelin died in 1851 the mission of the Sisters of Providence had been firmly established, a mission of compassionate care that would eventually involve more than 2,000 Sisters throughout the world. Always serving as the keystone for developing religious community were her final words, *"humility, simplicity, charity."*

## *Mother Bernard Morin*

In 1852 the first Sisters of Providence set out for the West in response to the request of bishops of the Washington Territory and people in need. Because no provisions had been made for their arrival, the Sisters decided to return to Montreal, via Cape Horn. They were to change ships in Chile, but seeing the needs of the people there, and being urged by the Archbishop of Santiago and public officials, the Sisters decided to stay. Over the years, the work of the Sisters of Providence in Chile has grown and flourished. Mother Bernard Morin became Superior of the Sisters of Providence in Chile in 1863, and until her death in 1929 served as a leader with

PHS_BK-000576

compassion and vision. Today, the poor, the orphans, the elderly and the sick continue to be cared for by the Sisters and their associates.

## Mother Joseph Of The Sacred Heart

A second group of Sisters of Providence was sent to the West in 1856 under the leadership of Mother Joseph of the Sacred Heart. Established in Fort Vancouver, they initially cared for poor, sick and elderly women and men in their homes, and gradually built the schools, orphanages, hospitals, and nursing homes that have become a distinctive testimony to the Providence mission in the West.

When Mother Joseph of the Sacred Heart died in 1902, she had led the Sisters of Providence in the West into the twentieth century. The Providence mission of caring for men, women, and children with material, social, and spiritual needs was strengthened over the succeeding years. Countless men and women were inspired by the early Sisters to respond to the challenges created in times of war and peace, discrimination and integration, depression and financial prosperity, the evolution in health care from the general hospital to the complex technological campus. In the present day, an era of market competition has brought us to the brink of national health care reform with unprecedented challenges and new opportunities to live out the mission.

## Into The 21st Century

Today, the Sisters of Providence Health System operates acute care hospitals, a range of long-term care facilities/services, primary care clinics, hospice, home care, educational facilities, low income housing, and managed care plans in the states of Alaska, California, Oregon, and Washington. The Sisters of Providence religious community also sponsors a high school, temporary emergency shelter for women and children, and housing for single women in transition.

The health care mission of the Sisters of Providence in the 21st century will continue to be inspired, shaped, focused and energized by our understanding of the original call: to care for the poor, the rejected persons of society, and those with special unmet needs. The emphasis today is on leadership to promote justice through effective social change and on direct service to the needy.

Appendix I shows the world-wide scope of the Sisters of Providence today.

PHS_BK-000577

### *Relationship Of Sisters Of Providence Healthcare Institutions To The Church*

All works sponsored by the Sisters of Providence are Catholic. The relationship with the Church is spiritual, giving rise to the Providence mission and ministry. It means that the works of the Sisters of Providence are an authentic expression of the mission of the Catholic Church. The Church defines its mission as one of bringing the gospel (good news) of God's love, fidelity and mercy to all people. This message is communicated not only in word, but through specific works of charity and justice. When persons have their human needs attended to in a loving and just way, they can come to know the "good news" that God does indeed care for them. Healthcare is a special ministry, providing rich opportunities to fulfill the Church's mission of healing body, mind and spirit.

The Catholic character of the Sisters of Providence Health System will be manifest in a variety of ways:

- A strong sense of identification with the Catholic Church, its teaching, prayer, and practice. ·
  Implications: adherence to Catholic social and moral teaching, sacramental practice and observance of Church (canon) law.

- An emphasis on spirituality and prayer as dynamic forces sustaining personal relationships among believers and with the Spirit.
  Implication: value-centered decision making as a process for empowering the community to realize its spiritual/eternal as well as temporal goals; the integral role of pastoral care, as a resource for addressing spiritual needs and enabling holistic healing for ill and dying persons.

- Presence of external signs and rituals—prayer, sacraments, religious signage— which give external expression to the internal life of the community, as well as nourish that life.
  Implication: presence of chapels for worship or appropriate space for reflection, regular celebration of the sacraments, and inclusive forms of prayer that invite all persons to participate in sacred worship. Also, material symbols of piety are displayed, such as the crucifix and portraits of the foundresses Mother Emilie Gamelin and Mother Joseph. Prayer before meetings is common.

- Identification with the person and teaching of Jesus Christ, which calls for humility, repentance, and conversion of life to the service of others.
  Implication: Sisters of Providence institutions and programs are attentive to the "signs of the times" through which the needs of society are revealed, and which point the way to generous and responsible action in service of others.

- Promotion of all that is good in human society, while working against injustice and the dehumanization of culture.
  Implication: institutional policies are rooted in principles of justice and charity; there is strong involvement in advocacy as a means to social justice.

PHS_BK-000578

# *Mission Statement*

### OUR MISSION

The Sisters of Providence Health System
continues the healing ministry of Jesus
in the world of today,
with special concern
for those who are poor and
vulnerable.  Working with
others in a spirit of loving service,
we strive to meet
the health needs of people
as they journey through life.

**August 1996**

4

PHS_BK-000579

# Chapter II
# Core Values Of The Sisters Of Providence Health System

During its history, the Sisters of Providence Health System has been inspired by the virtues of *humility*, *simplicity*, and *charity* and guided by fundamental values that characterized the life and teaching of Jesus Christ and that found expression in the lives of Mother Emilie Gamelin and Mother Joseph. Today, adherence to these core values calls for continuing and contemporary interpretation so that they can be a dynamic element in all decisions.

## ★ Core Values ★

### Sisters Of Providence Health System

"With trust in the *Providence* of God, we address the needs of our world, today and tomorrow" through fidelity to these core values.

In the core values, we hold ourselves accountable for integrating the mission into all aspects of our life as the Sisters of Providence Health System.

PHS_BK-000580

*Value*

# ★ Respect For Dignity Of Persons ★

## *Principles*

- Uniqueness Of Each Person As God's Creation
- Sacredness Of All Life
- Interdependence

## *Practices*

1. Uniqueness Of Each Person
   - Promote personal growth of one another
   - Respect uniqueness of each person: values, spirituality, cultural traditions, experience, insights, needs, relationships

2. Sacredness Of All Life
   - Care for life in all its stages
   - Provide compassionate care for dying persons and their loved ones
   - Affirm unique contributions of all persons

3. Interdependence
   - Walk humbly with fellow workers and those we serve
   - Empower one another in our work: fellow workers, and populations served
   - Seek diversity as self-transforming influences
   - Celebrate special moments in our life as a community

**6**

52

PHS_BK-000581

*Value*

★ **Justice** ★

## *Principles*

- Right Of All Persons To Basic Healthcare
- Fair And Equitable Treatment Of Employees And Those We Serve
- Extension Of Resources To The Most Needy
- Stewardship Of Resources

## *Practices*

1. Right Of All Persons To Basic Healthcare
   - Create structures that enhance access to health care, especially for the poor.
   - Advocate for just public policies
   - Emphasize collaboration; reduce competition
   - Focus on community health needs and responses

2. Fair And Equitable Treatment Of Employees And Those We Serve
   - Emphasize equality of all persons, as persons
   - Practice honesty, integrity and fairness in all relationships
   - Create policies and practices that encourage participation and equality, and that eliminate hierarchies and inequities among persons
   - Provide just compensation and benefits to all employees

3. Extension Of Resources To The Most Needy
   - Identify groups who are most in need, as the starting point for outreach programs to the community.
   - Reach out to individuals, groups, communities, agencies that have greatest needs
   - Implement the "open door policy" which supports access by the poor to health care.

4. Stewardship Of Resources
   - Allocate resources equitably (material and human)
   - Provide accountability for the use of all resources
   - Collaborate and cooperate to multiply values and benefits of resources
   - Invest in the development of people
   - Look to the future in goals and plans: "grow into the future"
   - Observe social accountability, fiduciary and financial
   - Share authority with those who have responsibility for the mission

**7**

PHS_BK-000582

*Value*

★ **Compassion** ★

*Principle*

- Awareness Of Oneness With Others In The Human Community
- Tender Care And Support For Those Who Suffer

*Practices*

1. Awareness Of Oneness With Others In The Human Community
   - Acknowledge vulnerability as fundamental to the human condition
   - Share pain, loss, and grief as occasions for growth in human relationships
   - Embrace joy as a gift of the human community

2. Tender Care And Support For Those Who Suffer
   - Understand the redemption value of suffering
   - Recognize the physical, mental, emotional and spiritual dimensions of pain and suffering experienced by those we serve
   - Provide the means to address the special needs of those who suffer, such as effective management of pain, privacy, human interaction, spiritual resources
   - Be sensitive to the familial, social-economic, and religious factors that affect suffering
   - Pray for and with those who suffer
   - Provide for employees resources to alleviate and reduce the stress associated with caring for suffering and dying persons

PHS_BK-000583

*Value*

★ **Excellence** ★

*Principles*

- High Quality In All Areas Of Service
- Meet Diverse And Holistic Needs
- Focus On Future, Inspired By The Spirit Of The Past

*Practices*

1. High Quality Of Care In All Areas Of Service
   - Embody the best of knowledge, resources, and practices
   - Involve staff, patients, residents, and family in decisions that affect their work, care and lives
   - Educate on national and community standards of care
   - Promote and maintain health of community
   - Recognize our strengths; acknowledge the superior performance of others

2. Meet Diverse And Holistic Needs Of All
   - Emphasize wellness, and needs of the whole person: physical, mental, social, psychological, spiritual
   - Understand, respect, and accommodate cultural diversity of patients, residents, staff

3. Focus On The Future, Inspired By The Spirit Of The Past
   - Anticipate and prepare for future needs through education and planning
   - Participate in the development of changing standards of care
   - Be willing to take risks and to be creative to achieve excellence now and in the future

PHS_BK-000584

## *Mission Assessment*

The core values of the Sisters of Providence Health System guide all decisions and provide criteria for assessment of individual and organizational adherence to the mission.

The following is a guide for assessing the regular integration of the mission into planning, budgeting, policy-making, and decision-making. Apply this guide to key events and decisions that express and reflect the life of the system.

1. **Purpose Of The action**
   - Why is this action being considered?
   - How does this action express the core values of Sisters of Providence Health System: Respect for the Dignity of all Persons, Justice, Compassion, Excellence

2. **Desired And Anticipated Outcomes**
   - What are the desired outcomes of the action?
   - What are the potential negative consequences of the action?
   - Specifically, what effect will this action have on: patients/residents? administration of the facility? staff of the facility? medical staff? service area community? health system as a whole? other agencies in the community? others who are concerned and interested?
   - Who may be particularly burdened by this decision?
   - In what specific ways will the Sisters of Providence Health System mission be furthered by this action?

3. **Quality Care**
   - Will the quality of care for populations served and for staff be maintained or strengthened by this action?
   - Will this action assure a continuum of care, with attention to the spiritual, emotional, and social needs as well as the physical needs of patients/residents?
   - What are implications for quality of life in the community?

4. **Participation**
   - Who have been involved in the process and decisions?
   - Have any concerned or interested parties been excluded from the process and decision?
   - Is there evidence of need to broaden the circle of participation?

5. **Ethical Challenges And Conflicts**
   - What are the ethical issues raised by this action?
   - What are the major sources of ethical conflict? Can they be resolved without disproportionate impact on those involved?
   - Has the action been analyzed following the ethical decision-making process?

   (Cf. Guidelines for Ethics Committees)



PHS_BK-000585

6.   **Implications For Future**
   - Have short term and long term future needs and directions been considered? As far as it is possible to anticipate in advance, will this action enable appropriate response and action in the future—or will it create unnecessary obstacles, conflicts, burdens in fulfilling the mission?

57

PHS_BK-000586

# Chapter III
## Staffing For Mission Integration
## Within Facilities And Regional Offices

### Guideline

Responsibility for promoting understanding of the mission and integration of Sisters of Providence Health System core values into all its works resides with the executive responsible for the program or institution. Staff responsibility may be assigned to a professional person on the institutional or regional leadership team.

### Position Description

**Title:**  Examples: Director of Mission-Values Integration; or Assistant for Organizational Values

**Reports to:**  Executive responsible for program, institution, or service (e.g., Administrator/CEO; Regional Vice President)

**Member of:**  Administrative Council; Mission Council/Committee; institutional Ethics Committee

### General Purpose

This person works with management, staff, physicians, boards, volunteers and community in furthering the understanding of the mission of Sisters of Providence Health System and the integration of the core values into the life and programs of the organization. This includes assuring that the mission and values are reflected in all policies and programs.

This person is also responsible for providing leadership and resources to enable the creation of Christian community which fosters the expression and integration of human, Christian, professional and organizational values.

### Specific Duties

1. Identify and plan programs and other activities for promulgating the mission and values of the Sisters of Providence Health System.

2. Develop orientation programs on the history, mission, values and goals of the Sisters of Providence Health System for all employees, physicians, board members and volunteers.

PHS_BK-000587

3. Develop a program for staff renewal that provides an opportunity each year for all employees to review, reflect on, and revitalize their commitment to the mission of the organization in which they work.

4. Take responsibility for the timely review and revision of the mission statement and other documents designed to communicate the mission and values of the organization.

5. Participate in the formulation of criteria for employee selection, performance reviews, employee compensation, and continuing education as it pertains to the mission and values.

6. Participate in the integration of mission and values into policies, procedures, objectives, and services in strategic operational areas: e.g., management, human resources, finances, planning, advocacy/ government relations.

7. Serve as a major resource in the development and implementation of programs for organizational transformation: for example, leadership and staff development, total quality improvement, promoting diversity in the workplace.

8. Initiate/support programs for observing and celebrating special events in the history and life of the Sisters of Providence and its Health System.

9. Advocate health care services that meet needs of the community.

10. Support and empower internal and external communities in outreach community service.

11. Serve on local, regional and system committees as appropriate: for example, ethics, liturgy, education.

12. Coordinate with System Vice President for Mission Leadership, and network with institutional and system leaders of mission and values integration.

13. Complete, every three years, a mission assessment of the facility. (This should be an ongoing process, with specific departments scheduled on rotating basis over three years.)

14. Coordinate missioning ceremonies for newly appointed administrators, in collaboration with system Vice President for Mission.

PHS_BK-000588

## Personal Qualifications

1. Theoretical and practical understanding, rooted in sound theology, of the mission and values of the Sisters of Providence Health System, and of the health care ministry of the Church. This will be manifest in personal life that reflects these values.

2. Mature understanding of the dynamics of organizations, and processes for organizational renewal.

3. Understanding of the theory and practice of adult learning, with ability to plan, implement and evaluate programs.

4. Evidence of leadership skills: the ability to inspire and influence others in pursuit of the goals of the Sisters of Providence Health System.

5. Advanced skills in group communications and group and team processes, including skills of facilitation, negotiation, conflict resolution.

6. Excellent skills in both verbal and written communication.

7. Confidence and effectiveness in public speaking and group presentations.

8. Organizational skills, including ability to work as team member and to interact creatively with others.

9. Understanding of ethical decision-making processes; and ability to facilitate reflection, values clarification, and decisions in light of Sisters of Providence Health System values.

## Educational Qualifications

1. Masters level degree in liberal arts, theology, or in a health-related specialty.

2. Formal study of theology, with either major or minor concentration in theology or religious studies.

3. Understanding of the principles and practice of adult learning.

## Experience

Experience in management, education, or clinical practice in healthcare-related field; or, orientation to health care through a structured internship program.

15

PHS_BK-000589

# Chapter IV
# Organizational Relationships

The Director/Assistant for Mission-Values Integration will have a special relationship to particular departments and staff persons, because of the unique manner in which they communicate and/or implement the tenets of the mission.

These departments include:

1.  **Pastoral Care**
    The Sisters of Providence Health System is dedicated to holistic care. This means that attending to the spiritual and religious needs of patients, residents, and all staff is regarded as integral to the healing of persons. The appropriate management, staffing and support of pastoral care departments, in accord with standards of professional excellence, is a priority in all Sisters of Providence Health System institutions and offices, including satellite clinics and home health settings.

    [Cf. Pastoral Care Standards and Policies]

2.  **Ethics Committees**
    Ethics committees have a distinct role in the Sisters of Providence Health System. They serve as the resource for integrating core values into policies and procedures, for applying the Sisters of Providence Health System values to decisions affecting individuals, organizations and the community. Implementing Sisters of Providence Health System guidelines for the formation, operation, education and evaluation of ethics committees is a unique manifestation of commitment to the mission of Sisters of Providence Health System.

    [Cf. Guidelines for Ethics Committees
    in Sisters of Providence Health System facilities]

3.  **Human Resources**
    The formation of a community of service dedicated to the christian values of the Sisters of Providence Health System begins with the selection of leaders and employees in our facilities, and continues with the implementation of just and timely policies which are the work of human resources departments: for example, compensation and benefits, performance management, career advancement, employee development and training, etc.

4.  **Communications And Public Relations**
    The public relations/communications office has a unique role in articulating and communicating the meaning of the Sisters of Providence Health System mission to various publics, in the programs and activities through which it is implemented, and in inviting community participation in the mission.

PHS_BK-000590

# Planning

The mission and core values of the Sisters of Providence Health System will be explicitly stated and integrated into all planning activities and documents.

The mission and core values provide a value-based framework to guide the planning process in a way that consistently incorporates and communicates the mission and core values of Providence Health System as the foundation of its ministry and its service to our communities and to one another.

Implementation and evaluation of the strategic plans and related programs also include appropriate participation of the persons and gorups who are the recipients of the services offered by Providence Health System and its subsidiaries.

PHS_BK-000591

## Marketing/Public Relations

The Marketing and Public Relations Department has an unique role in articulating and communicating to various publics the meaning of the mission of the Sisters of Providence Health System.

The department will reflect the mission and values in all publications and communications. The department promotes the image of the organization in all its marketing efforts.

Through planning and communications, Mission Leadership and the Marketing/Public Relations Department cooperate to share information that can enrich mission awareness and understanding the organization and community.

18-ii

63

PHS_BK-000592

# Organizational Relationships

# Quality Improvement

The integration of Mission and Continuous Quality Improvement enables the Sisters of Providence Health System to reflect a value-based mission throughout the whole conitnuum of care with an improvement process that is precise and measurable.   Through the qualities of leadership, empowerment, and systematic methodologies, the integration can lead to organizational transformation.  Our accountability is guided by these indicators.

- The people we serve will experience the organization's commitment to the core values of respect, justice, compassion, excellence in the way service is provided.

- Members of the organization assume responsiblity and accountability for integrating core values into the process of continuous quality improvement.

- The members of the organization use a systematic methodology for decision making based on ethical principles.

- The community recognizes the mission of the organization as fostering collaborative efforts which respond to identified health and social needs.

PHS_BK-000593

# Exhibit B

 Providence | SoundHomeCare and Hospice 

# PERSONNEL ACTION REQUEST

Name _Beverly Jane Knodel_    Location/County _Thurston_   Job Title _RN-Hospice_

## 1. INFORMATION ONLY    Starting Date: _7/7/_

Address _1337 Goldenrod Dr SE_     _Lacey_     _98513_
          Street                           City              State      Zip

Telephone _360-456-3172_  Birth Date _08/05/1944_  Social Security # _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_  FTE _1.0_

Supervisor _Steven Williams_  ☐ Exempt  ☒ Non-Exempt  Base Pay Rate _32.28_  Premium/Hour / Salary _Hour_

Department _Hospice / 313232_  Schedule _____  ☐ Transfer from _____  Service Date: _____

(_HR USE_) Job Code _8122_  Female _X_ Male ___  Milliman Code _1_  Union Code _1_  GTL _68000-_

## 2. PERSONAL RECORD CHANGES    Effective Date:

New Name _____   New Telephone _____

New Address _____

Employee Signature _____   Comments _____

## 3. STATUS CHANGES ONLY    Effective Date:

Type:  ☐ Pay Rate Change   ☐ Transfer        ☐ LOA
       ☐ FTE               ☐ Reclassification ☐ LOA Return

Explanation _____

|  | | Current | New |
|---|---|---|---|
| Status Changes: | Job Title | | |
| | Location | | |
| | FTE | | |
| | Pay Rate | | |
| | Schedule | | |
| | Other | | |

LOA Info:

LOA Reason _____   LOA Return Date (expected) _____

Paid Leave: ☐ Yes  Paid Through _____  ☐ No   Adj Seniority Date _____

Remarks _____

## 4. TERMINATION    Effective Date:

☐ Voluntary   ☐* Involuntary  Last Day Worked _____  Termination Code _____ (_HR_)

Reason for Termination/Comments _____

Rehire: ☐ Yes ☐ No   *Employee Notified: ☐ Yes ☐ No   Cash Out Vacation: ☐ Yes ☐ No

Returned Equipment: ☐ Badge   ☐ Cell phone/pager  ☐ Keys  ☐ Equipment/Car Box  ☐ Other

## 5. AUTHORIZATION    Effective Date: _7/1/06_

Supervisor _Steven Williams RN_ Date _4/18/06_   Department Director _Lisa Battle_ Date _4/19/06_

### PLEASE SEND ALL COPIES OF COMPLETED FORM TO HUMAN RESOURCES

PHS_BK-000007

# Exhibit C

*General, Chest, Laparoscopic & Vascular Surgery*

**SURGICAL ASSOCIATES P.L.L.C.**

☐ CHRIS N. GRIFFITH, M.D.
DEA No.AG9727605

☒ RICHARD T. KRUG, M.D.
DEA No.BK6686630

☐ ROBIN MILLER, RN, MSN, ARNP
DEA No.ME0420391

☐ JAMES L. REUS, M.D.
DEA No.AR1693236

☐ KEVIN D. ROBINSON, M.D.
DEA No.BR5320433

NAME  Knodel  Beverly  AGE _____

ADDRESS _____  DATE  11-3-08

℞

Ms. Knodel is having surgery
Nov 6-08. She will be
off Work for two weeks

R. Krug

REP.  TIMES
☐ NR
☒ P.R.N.

_____  M.D.          _____  M.D.

SUBSTITUTION PERMITTED          DISPENSE AS WRITTEN

360/493-5252 · 3610 Ensign Road NE, Olympia, WA 98506-5025 · FAX 360/493-5257

prescrip/1027S-PRES (9/19/2007)

PHS_BK-000098

# Exhibit D



## Leave of Absence Statement

### Employee Information

| Employee Name | Employee # | Manager | Department |
|---|---|---|---|
| Knodel, Beverly J. | 291326 | Kelly, Nancy | Hospice Srvs V |

| Location | HR Contact | Date of Hire | FTE | Union |
|---|---|---|---|---|
| Soundhomecare Olympia | Richards, Cheryl | 1/1/1971 | 1 | PSHC1199 |

### Eligibility Information

| Years of Service | Hours Worked | FMLA Taken | | FMLA Remaining | | FMLA Eligible? |
|---|---|---|---|---|---|---|
| 37.87 | 1,314.00 | 0.00 | work weeks | 12.00 | work weeks | Yes |

### Leave of Absence Information

| Begin Date | End Date | Work Related? | Reason for Leave |
|---|---|---|---|
| 11/6/2008 | 11/6/2009 | ☐ | FMLA - Employee's Own Health Condition |

| | Intermittent? | Intermittent Frequency |
|---|---|---|
| | ☑ | 5 days a week for 1 hour. |

| | Status | |
|---|---|---|
| | Approved | |

Please Note:  This employee may be eligible for other protections afforded under a collective bargaining agreement (CBA).  Please consult the applicable CBA for more information.

Frm 7-06

# Exhibit E

# ✚ PROVIDENCE  Certification of Health Care Provider
**Health & Services**

## MUST BE COMPLETED BY HEALTH CARE PROVIDER

Your patient is requesting a leave from his/her job. Information from you helps us determine the employee's eligibility for leave under the Family Medical Leave Act (FMLA) and/or Washington state law. We encourage you to be thorough in your evaluation as you complete the required sections.

### Provider Instructions:
- **For employee's own serious health condition complete Part 1, Part 2, Part 3 & Part 4**
- **For employee's family member serious health condition complete Part 1, Part 2 & Part 5**

### PART 1 Evaluation Summary

**Name of Employee:**   (Last)   *Knodel*   (First)   *Beverly*   (MI)   *Jane*

**Patient's Name (Family Member) if different from employee:** (Last)   (First)   (MI)

**Relationship of Family member to the Employee**

Does the employee's or patient's, if different, condition[1] qualify as a "serious medical condition" as described below? **Please check which category(ies) applies:**

NOTE:   A serious medical condition is defined as any illness, injury or impairment, or any physical or mental condition that involves: (a) any period of incapacity[2] or treatment in connection with or consequent to inpatient care in a hospital, hospice or residential care facility; (b) any period of incapacity that requires an absence of more than three calendar days and also requires continuing treatment by a health care provider; or (c) continuing treatment by a health care provider for a chronic or long-term condition, which would likely result in an absence of more than three calendar days if it were not treated.

☐   *Hospital Care:*  Inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential medical care facility, including any period of incapacity or subsequent treatment in connection with or consequent to such inpatient care.

☒   *Absence Plus Treatment:* A period of incapacity of more than three consecutive calendar days including any subsequent treatment or period of incapacity relating to the same condition, that also involves: (check one)

    ☒   Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
    ☐   Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

☐   *Pregnancy:* Any period of incapacity due to pregnancy, or for prenatal care.

☐   *Chronic Conditions Requiring Treatments:* A chronic condition is defined as:
- Requires periodic visits for treatment by a health care provider, or by a nurse or physician's assistant under direct supervision of a health care provider;
- Continues over an extended period of time (including recurring episodes of a single underlying condition); **and**
- May cause episodic rather than a continuing period of incapacity (asthma, diabetes, epilepsy, etc.).

☐   *Permanent/Long-term Conditions Requiring Supervision:* A period of incapacity which is permanent or long-term due to a condition for which treatment may not be effective. The employee or family member must be under the continuing supervision of, but need not be receiving active treatment by, a health care provider. Examples include Alzheimer's, severe stroke, or terminal stages of a disease.

---

[1] Here and elsewhere on this form, the information sought relates only to the condition for which the employee is taking FMLA leave.
[2] "Incapacity," for purposes of FMLA, is defined to mean inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor or recovery there from.

**❋MUST BE COMPLETED BY HEALTH CARE PROVIDER❋**

Page 1 of 3

## ✳ MUST BE COMPLETED BY HEALTH CARE PROVIDER ✳

☒ **Multiple Treatments (Non-Chronic Conditions):** Any period of absence to receive multiple treatments (including any period of recovery therefrom) by a health care provider or by a provider of health care services under orders of, or on referral by, a health care provider, either for restorative surgery after an accident or other injury, or for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer, (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

☐ **Wounded Service Member:** A serious injury or illness, where in the case of a member of the armed forces, including a member of the national guard or reserves, means an injury or illness incurred by the service member in the line of duty while on active duty in the armed forces that may render the member medically unfit to perform the duties of the service member's office, grade, rank or rating.

**Statement of Medical Facts. (REQUIRED)** Describe the medical facts that support your certification. Include a brief statement as to how the medical facts meet the category of serious health condition marked above.

Breast cancer , s/p needle localization excision .
Localized radiation to surgical site recommended

Date the condition commenced: _____ 1 Date-08

Probable duration of condition: _____ #     ☐ Days  ☐ Weeks  ☒ Months

### Part 2:  Type of Leave Needed by Our Employee (check all that apply)

| ☐ Continuous Block of Time | ☒ Intermittent Absences | ☐ Reduced Work Schedule |
|---|---|---|
| Begin Date: _____ | **Including time needed for treatment and recovery | Begin Date: _____ |
| End Date: _____ | Begin Date: 11-6-08 | End Date: _____ |
| Or | End Date: 11-6-09 | _____ # hours per shift |
| # of Weeks: _____ | Estimated frequency of absences: | _____ # days per week |
| | 5 days weekly - 1 hr tx | |
| | (For example: 3 x per week, 6 x per year, 1 hour each week, etc.) | |

### Part 3: Treatment

Is it necessary for our employee to be absent from work for treatment?     ☒ Yes  ☐ No

If the employee or patient, if different, will be absent from work or other daily activities on an intermittent or part-time basis because of treatment, please provide:

An estimate of the probable number of treatments: _____ up to 40

An estimate of the frequency of treatments: Every Mon-Fri ☒ Days  ☐ Weeks  ☐ Months

An estimate length of time needed for treatments: _____ 1 ☒ Hours ☐ Days ☐ Weeks

The actual or estimated dates of treatment (if known): 5 wks to 10 wks

The estimated or actual period required for recovery, if any:     ☐ Days  ☐ Weeks  ☒ Months

If a regimen of continuing treatment is required for the employee or patient, if different, under your supervision provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment).

If any treatments will be provided by another provider of health services (e.g., physical therapist), please state the nature of the treatments.     Radiant Care Radiation Oncology

## ✳ MUST BE COMPLETED BY HEALTH CARE PROVIDER ✳

Page 2 of 3

## ❋MUST BE COMPLETED BY HEALTH CARE PROVIDER❋

### Part 4: Health Care Provider Recommendations

If medical leave is required for the employee's absence from work because of the employee's own condition (including absences due to pregnancy or a chronic condition), is the employee able to perform work of any kind?

If able to perform some work, is the employee able to perform any one or more of the essential functions of the employee's job (the employee or the employer should supply you with information about the essential job functions)? If yes, please list the essential functions the employee is able to perform.

If neither of the above applies, is it necessary for the employee to be absent from work for treatment?

*Yes. Radiation treatments for breast cancer*

### Part 5: Evaluation of Employee's Family member only

**For the employee's family member:** If leave is required so that our employee can care for your patient with a serious health condition, does the patient require assistance for:

Basic medical needs? ☐ Yes  ☐ No          Safety?  ☐ Yes  ☐ No

Personal needs?  ☐ Yes  ☒ No     Transportation?  ☐ Yes  ☐ No

**For the employee's family member** – If none of the above, would the employee's presence provide psychological comfort that would be beneficial to your patient or assist in the patient's recovery? ☐ Yes  ☐ No

### Part 6: Signature of Health Care Provider

| Name of Health Care Provider (please print or type) | Provider's Area of Specialty |
|---|---|
| *Erin Kershisnik, MD* | *F.P.* |

Address, City , State, Zip Code
*3703 Ensign Rd. NE    Suite 10-A    Olympia, WA  98506*

| Signature of Health Care Provide | Phone No. | Date |
|---|---|---|
| *(signature)* | *360 438 1161* | *12 - 4 - 08* |

### Part 7: TO BE COMPLETED BY THE EMPLOYEE NEEDING LEAVE TO CARE FOR A FAMILY MEMBER

Describe the care you will provide and an estimate of the period during which care will be provided, <u>including a schedule</u> if leave is to be taken intermittently or by working less than your usual schedule:

*(signature)*                     *11-21-08*
Employee signature                  Date

| Please return form to: | Providence Health and Services<br>ATTN: LOA Administration<br>PO Box 389672 Seattle, WA  98138-9672<br>Fax: 425-525-3419 |
|---|---|

## ❋MUST BE COMPLETED BY HEALTH CARE PROVIDER❋

Page 3 of 3

PHS_BK-000097

# Exhibit F



CONFIDENTIAL

PHS_BK-000944

# Exhibit G

# RESTATED BYLAWS
## OF
## PROVIDENCE HEALTH & SERVICES—WASHINGTON

## ARTICLE I
## THE CORPORATION IN GENERAL

**1.1** **NAME AND DESCRIPTION.** The name of the corporation shall be Providence Health & Services—Washington ("Corporation").  It is a nonprofit corporation organized and existing under the laws of the State of Washington. It is a Roman Catholic institution, sponsored by Providence Ministries.

**1.2** **PURPOSES.** The purposes for which the Corporation has been formed are as follows:

**1.2.1**   To establish, operate, manage and maintain for charitable purposes, hospitals, nursing homes, and other health care, educational, and social service facilities and programs designed to meet the health, educational and social needs of all people;

**1.2.2**   To provide scientific research, educational, charitable and such other activities, services and programs related to its health care facilities and services;

**1.2.3**   To engage in other charitable works which are consistent with the objectives of the Corporation and the mission and values of the Providence Health & Services and guided by the tradition and charism of the Sisters of Providence, as appropriate; and

**1.2.4**   To do any and all other things in furtherance of these purposes which are consistent with the laws of the State of Washington, the Articles and Bylaws of Providence Health & Services and the Roman Catholic moral tradition as articulated in documents such as *The Ethical and Religious Directives for Catholic Health Care Services*.

**1.3** **LOCATION.** The principal office of the Corporation shall be located at 1801 Lind Avenue SW #9016, Renton, Washington 980574-9016.

## ARTICLE II
## MEMBER

**2.1** **MEMBER.** The sole Member of the Corporation is Providence Health & Services ("Providence").

**2.2** **POWERS OF THE MEMBER.** In addition to all matters required by the Articles of Incorporation or other provisions of these Bylaws which are required to be approved by Providence, and subject to the reserved rights held by the Member of Providence, Providence

PHS_BK-000649

shall have the right to recommend to the Providence Member the following actions with respect to this Corporation and of any corporation or other legal entity of which this Corporation is the sole or controlling member or shareholder (except as otherwise noted below):

    **2.2.1**  To adopt or change the mission, philosophy, or values;

    **2.2.2**  To amend or repeal the Articles of Incorporation or Bylaws;

    **2.2.3**  As to this Corporation, to fix the number of Directors, appoint the Board of Directors and to remove such Directors at any time with or without cause;

    **2.2.4**  To appoint and remove the President/Chief Executive Officer of this Corporation and to remove such President/Chief Executive Officer, with or without cause, after requesting a recommendation from the Board of Directors;

    **2.2.5**  To approve the acquisition of assets, the incurrence of indebtedness or the lease, sale, transfer, assignment, or encumbering of the assets, if the amount involved in any such transaction is in excess of an amount specified from time to time by resolution of the Providence Member and to approve the sale or transfer of other property which may have either historical or religious significance;

    **2.2.6**  To approve the dissolution, liquidation, consolidation or merger with another corporation or entity;

    **2.2.7**  To approve on a consolidated system-wide basis the annual operating and capital budgets and approval of any deviations from such budget in excess of an amount or percentage specified from time to time by resolution of the Providence Member;

    **2.2.8**  To appoint the certified public accountants after receiving the recommendation of the Board of Directors and to receive the annual audit report from such accountants; and

    **2.2.9**  To approve the initiation or closure of any major work.

## ARTICLE III
## BOARD OF DIRECTORS OF THE CORPORATION

    **3.1**  **POWER OF THE BOARD OF DIRECTORS.**  The Board of Directors shall exercise general governance and control of the mission and business affairs of the Corporation and shall have and exercise all of the powers which may be exercised or performed by the Corporation under the laws of the State of Washington and these Bylaws, with due regard for the powers reserved to the Member of the Corporation as stated in Article II of these Bylaws.

    **3.2**  **COMPOSITION OF THE BOARD.**  The Board of Directors of this Corporation shall consist of the same individuals as those then currently serving on the Board of

PHS_BK-000650

Directors of its sole Member, Providence. Appointment, term, and removal of a Board of Director from this Corporation's sole Member, Providence, shall constitute appointment, term of office, and removal from such individual's service as a Board of Director of this Corporation. In the event a Member of the Board of Directors of Providence shall resign, such resignation shall automatically cause the resignation of such Board of Director as a Director of this Corporation.

**3.3  CHAIRPERSON OF THE BOARD.**  The Chairperson of the Board of Directors of this Corporation shall be the same individual then serving as Chairperson of the Board of this Corporation's sole Member, Providence. Such Chairperson of the Board of this Corporation shall serve in such capacity so long as such individual is serving as the Chairperson of the Board of Providence.

**3.4  ACTING CHAIR.**  Any individuals serving as the Acting Chair of the Board of Directors of this Corporation's sole Member, Providence, shall also serve as the Acting Chair of this Corporation.

**3.5  MEETINGS AND PROCEDURAL RULES.**

**3.5.1  Annual Meeting.**  The annual meeting of the Board of Directors shall be held by December 31 of each year. Such meeting shall be held at the principal office of the Corporation or at such place as may be designated from time to time by the Chairperson. The purposes of the annual meeting shall include, without limitation, electing officers as herein provided and transacting such other business as shall be necessary or desirable.

**3.5.2  Regular Meetings of the Board.**  Regular meetings of the Board of Directors shall occur at least four (4) times a year at such time and place as the Directors shall provide by resolution.

**3.5.3  Special Meetings of the Board.**  Special meetings of the Board of Directors may be called upon written request by the Member, two or more Directors, the Chairperson of the Board or the President/Chief Executive Officer.

**3.5.4  Notice of Board of Directors Meetings.**  Written notice of all Board of Directors meetings shall be mailed by first class mail, personally delivered, or sent by electronic transmission pursuant to Section 18.5 to each Director at least five (5) days before the date of the meeting, which notice shall in the case of special meetings state the nature of the business to be taken up at the meeting. If mailed, such notice shall be deemed to be delivered when deposited in the U.S. Mail, postage prepaid, addressed to the Director at their address as it appears in the records of the Corporation.

**3.5.5  Quorum.**  For all meetings of the Board of Directors (other than for action taken by unanimous written consent), a quorum shall be a simple majority of the Directors then serving unless a greater majority is required by law or by these Bylaws.

PHS_BK-000651

**3.5.6   Action by Unanimous Written Consent.**  Waiver of notice of any Board meeting or any action required to be taken at a meeting of the Board of Directors, or any other action which may be taken at a meeting of the Board of Directors, may be taken without a meeting if a consent in writing, setting forth the actions so taken, is signed by all the Directors entitled to vote with respect to the subject matter thereof. Any consent signed by all the Directors shall have the same effect as a unanimous vote.

**3.5.7   Telephonic Meetings.**  Directors may participate in and act at any meeting of such Board by means of conference telephone, videoconference or similar communication equipment by which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting.

**3.5.8   Voting.**  Voting on any question or in any election may be by voice, unless the individual presiding at the meeting shall order, or a Director shall demand, that voting be by ballot.

**3.5.9   Manner of Acting.**  Each Director shall be entitled to one vote on all matters voted on at any meeting. Except as otherwise provided by law, the Articles of Incorporation, or these Bylaws, the act of a majority of the Directors present at the meeting at which a quorum is present shall be the act of the Board of Directors.

**3.5.10   Compensation/Reimbursement of Directors.**  Directors may receive reasonable compensation for their services as Directors, as determined from time to time by the Member.  Directors shall be reimbursed for reasonable expenses of attendance at meetings or when on other business of the Corporation.

**3.5.11   Board Evaluation.**  Under the direction of the Governance Committee, the Board of Directors shall annually evaluate their performance.

**3.6   PRESUMPTION OF ASSENT.**  Any Director who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be conclusively presumed to have assented to the action taken unless (1) he/she abstains and his/her abstention is recorded in the minutes of the Corporation; (2) his/her dissent shall be entered in the minutes of the meeting; (3) he/she shall file his/her written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof; or (4) he/she shall forward such dissent by registered mail  to the Secretary of the Corporation immediately after the adjournment of the meeting. The right to dissent shall not apply to a Director who voted in favor of an action.

### ARTICLE IV
### OFFICERS OF THE CORPORATION

**4.1   OFFICERS.**  The officers of the Corporation shall be the President/Chief Executive Officer, one or more Vice President(s), a Secretary and a Treasurer and such other officers as may be elected from time to time by the Board of Directors. The powers and duties of

PHS_BK-000652

the officers shall be as set forth in these Bylaws and as otherwise designated from time to time by the Board of Directors, to the extent consistent with law, the Articles of Incorporation of the Corporation and these Bylaws. Any number of offices may be held by the same person except that the Secretary may not serve concurrently as the President. The officers of this Corporation shall be the same individuals serving as the officers of this Corporation's sole Member, Providence. In the event such officer either resigns or is otherwise removed as an officer of Providence, such officer's office with this Corporation shall automatically terminate as of the effective date of their removal or resignation as an officer of Providence.

**4.2   PRESIDENT/CHIEF EXECUTIVE OFFICER.** The President/Chief Executive Officer shall be the chief executive officer of the Corporation and shall be the direct executive representative of the Board of Directors in the management of the Corporation. The President/Chief Executive Officer shall have and exercise general management and supervision of the affairs of the Corporation, subject to the reserved powers of the Member and the direction of the Board of Directors.

**4.3   VICE PRESIDENT(S).** The Vice President(s) shall perform such duties as are established from time to time by the Board and shall report to the President/Chief Executive Officer. In all other matters, the Vice President(s) shall function in accordance with the specific powers which have been delegated to them by the Board and/or the President/Chief Executive Officer.

**4.4   TREASURER.** The Treasurer shall have general charge and responsibility relating to the financial concerns of the Corporation. The Treasurer shall perform such other duties and functions as may from time to time be designated by the Board of Directors, subject to the overall control of such Board. The Treasurer shall be responsible for causing an audited financial statement to be provided to the Member and to the Board of Directors at least annually.

**4.5   SECRETARY.** The Secretary shall be the custodian of and shall maintain the corporate books and records, the minutes of the meetings of the Board of Directors and assure that all required notices are duly given in accordance with these Bylaws, the Articles of Incorporation of the Corporation or as otherwise may be required by law. The Secretary shall, in general, perform all duties incident to the office of Secretary, subject to the control of the Board of Directors and shall do and perform such other duties as may be assigned from time to time by the Board of Directors.

**4.6   ASSISTANT TREASURERS AND ASSISTANT SECRETARIES.** The assistant treasurers and assistant secretaries shall perform such duties as shall be assigned to them by the Treasurer or Secretary, respectively, or by the President/Chief Executive Officer or the Board of Directors.

**4.7   ADDITIONAL OFFICERS.** The Board of Directors by resolution may create such additional and special offices as may be necessary or desirable in addition to those described herein and may by such resolution provide for the election by the Board of Directors of any person to perform the duties and exercise the authority of such office.

PHS_BK-000653

**4.8    DELEGATION.**  The Board may delegate temporarily the powers and duties of any officer, in case of such officer's absence or for any other reason, to any other officer, and may authorize the delegation by an officer of any such officer's powers and duties to any agent or employee subject to the general supervision of such officer.

## ARTICLE V
## COMMITTEES OF THE BOARD

This Corporation shall have the same committees, committee members, and coterminous committee meetings with those committees established by this Corporation's sole Corporate Member, Providence.  This Corporation's committees shall meet coterminously with the Providence Board committees established pursuant to the Providence Bylaws.  The Board committee charters and other rules for functioning of such committees of this Corporation shall be identical to those of its sole Corporate Member, Providence.

## ARTICLE VI
## MINISTRIES

The Corporation shall be organized into such ministries ("Ministries") as the Board of Directors may determine from time to time. As designated from time to time by the Board of Directors and the President/Chief Executive Officer, appropriate management ("Designated Manager") shall be responsible for the various Ministries. In such capacity, the Designated Manager shall have authority for carrying out the general administration and management of such Ministries in accordance with all applicable resolutions of the Board of Directors, policies of this Corporation or of Providence ("System policies"), the Governance and Executive Management Authority and Shared Governance Accountability Matrix (the "Matrix") and the management reporting relationships that are in effect from time to time as determined by the President/Chief Executive Officer and the Board of Directors. In addition, the Designated Manager shall have authority to act on all matters relating to the medical staffs of the Ministries, subject to the authority delegated to the Community Ministry Board and further subject to the applicable medical staff bylaws and other System policies and resolutions relating to medical staff relationships that may be in effect from time to time. Each Designated Manager shall be appointed in accordance with System policies and the Matrix and shall be designated by such other title or designation as may be determined by the President/Chief Executive Officer.

## ARTICLE VII
## MEDICAL STAFF

**7.1    MEDICAL STAFF.**    Each hospital owned and/or operated by this Corporation shall have a medical staff consisting of those licensed physicians, dentists and other independent licensed practitioners as the Board of Directors may permit in accordance with the provisions of applicable state law, accreditation standards and the provisions of the medical staff bylaws for each such hospital.

RESTATED BYLAWS
PH&S-WA
Effective December 31, 2009

6

Each long term care facility or other health care facility or division of this Corporation shall establish necessary or appropriate policies, guidelines, procedures, or bylaws where applicable, as are appropriate for the institutional management and maintenance of quality patient care to be provided by licensed physicians, dentists or other independent licensed practitioners.

**7.2     QUALIFICATIONS.**  Subject to any delegated authority pursuant to §7.5 and §8.2 hereof, the Board of Directors shall have final authority over appointments and reappointments of medical staff members, over the granting of and delineation of clinical and practice privileges, and over the revocation or other curtailment of medical staff membership and/or clinical or practice privileges. Each medical staff shall evaluate the professional competence and qualifications of applicants for appointment or reappointment and for the granting of clinical privileges, and shall make recommendations concerning the suitability of all such applicants. Each medical staff shall in like manner evaluate all cases where revocation, curtailment, suspension or other limitation of staff membership or privileges is being considered and shall recommend action to the administrator relating to such matter. The Board of Directors shall only take action on appointments, reappointments, revocations or curtailment of membership and/or privileges after receiving and considering the recommendation of the medical staff except in those cases where such recommendation is being unreasonably delayed or where quality of patient care concerns warrant summary or other immediate action. Designated management may be assigned authority to act on behalf of the Board of Directors consistent with these Bylaws, applicable System policies and corporate resolutions and medical staff bylaws.

**7.3     MEDICAL STAFF BYLAWS.**  Subject to approval of the Board of Directors, each medical staff is responsible for the development, adoption and periodic review and revision of medical staff bylaws, rules and regulations that are consistent with hospital and System policies, Joint Commission standards, and applicable federal and state laws and regulations. Such bylaws shall define the organization of the medical staff and establish procedures for evaluations and recommendations concerning appointments, reappointments, revocation or curtailment of staff membership or privileges, procedures for formal and effective medical staff participation in formulating hospital policies and standards of patient care and such other matters as the medical staff and the hospital shall deem appropriate for inclusion in such medical staff bylaws, rules and regulations. The medical staff bylaws and any amendment thereto are subject to, and effective upon, approval by the Board of Directors.

No person shall be denied medical staff membership or clinical privileges in any institution of this Corporation on the basis of sex, race, creed, color or national origin or on the basis of any other criteria unrelated to professional competence, patient care, the purpose, needs and capabilities of the hospital and/or the community in which it is located or other criteria reasonably related to professional standards, hospital efficiency, or other appropriate criteria as may be established from time to time.

Medical staff bylaws shall include appropriate provisions requiring all members of the medical staff to conform to the Providence mission and core values and the Roman Catholic moral tradition as articulated in documents such as *The Ethical and Religious Directives for*

PHS_BK-000655

*Catholic Health Care Services* as may be amended from time to time while such medical staff member is practicing in any hospital, health care facility, program or service operated by this Corporation.

**7.4   RELATIONSHIP OF RESPONSIBILITIES OF BOARD OF DIRECTORS AND MEDICAL STAFF.** The Board of Directors holds the medical staff accountable for the professional care practiced in each hospital. Each medical staff shall regularly review and analyze its clinical experience and shall be responsible for participating in quality management activities as mandated from time to time by the Joint Commission or other state licensing bodies of healthcare organizations, by applicable laws and regulations, by the medical staff bylaws, by System policies and procedures and by this Board of Directors. Adequate, accurate and timely medical records shall be prepared and maintained for all patients. A report of the results of the quality review and analysis shall be regularly submitted to the Board in accordance with System policy and in a manner designed to assure maximum protection under applicable provisions of state law regarding the confidentiality of quality assurance and peer review information.

**7.5   DELEGATION OF MEDICAL STAFF AUTHORITY.** The Board of Directors may, from time to time, delegate its authority with respect to medical staff matters as provided for in § 8.2 of these Bylaws to the Community Ministry Boards  In such event, the Community Ministry Boards shall have all authority of the Board of Directors as stated in these Bylaws with respect to medical staff matters and shall function as the governing body of this Corporation for such matters, consistent with applicable requirements of federal and state laws and regulations, meeting Medicare conditions of participation requirements, and fulfilling compliance with the Joint Commission's requirements.

## ARTICLE VIII
## SHARED GOVERNANCE

**8.1   COMMUNITY MINISTRY BOARDS.** This Corporation shares governance with its Community Ministry Boards as set forth in the Community Ministry Board Bylaws, as approved by the Board of Directors.   Each of the Corporation's Ministries, as determined appropriate by the Board of Directors shall establish a Community Ministry Board to assist, consult with and advise management and this Corporation.   The Community Ministry Board Bylaws shall be uniform for all Providence Ministries.

**8.2   DELEGATED AUTHORITY.** The Board of Directors may, from time to time, delegate certain Board responsibilities to the Community Ministry Boards as set forth in the Community Ministry Board Bylaws or by policy. In matters that have been delegated by the Board of Directors to the Community Ministry Boards, the Community Ministry Boards shall have full authority and be accountable to the Board of Directors with respect to the matters delegated and shall serve as the governing body of the Corporation's Ministries  for fulfilling such delegated responsibilities consistent with applicable federal and state laws and regulations, meeting Medicare conditions of participation requirements, and fulfilling compliance with the Joint Commission.

PHS_BK-000656

**8.3    ADVICE AND COUNSEL.**   The Community Ministry Board is responsible, as set forth in the Community Board Bylaws, for providing advice, counsel and direction to this Corporation for the Ministries for which it is accountable.

## ARTICLE IX
## VOTING UPON STOCK OF OTHER CORPORATIONS

Subject to the reserved rights set forth in Section 2.2, and unless otherwise ordered by the Board of Directors and subject to the direction, if any, given by the Board of Directors, any officer of this Corporation shall have full power and authority on behalf of the Corporation to vote either in person or by proxy at any meeting of stockholders of any corporation in which this Corporation may hold stock or otherwise have an opportunity to vote, and at such meeting may possess and exercise all the rights and powers incident to the ownership of such stock or membership which, as the owner thereof, this Corporation might have possessed and exercised if present.

## ARTICLE X
## DUALITY OF INTEREST

Any Member, Director, officer, employee, Community Board member or committee member having an interest in a transaction, contract or other matter presented to the Board of Directors or a committee thereof for authorization, approval or ratification shall provide prompt, full and frank disclosure of his or her interest to the Board or committee prior to its acting on such contract or transaction. The body to which such disclosure is made shall determine, by a majority vote, whether a duality or conflict of interest exists or can reasonably be construed to exist. If a conflict is deemed to exist, such person shall not vote on, nor use his or her personal influence on, nor participate (other than to present factual information or to respond to questions) in the discussions or deliberations with respect to, such contract or transactions. Such person may be counted in determining the existence of a quorum at any meeting where the contract or transaction is under discussion or is being voted upon. The minutes of the meeting shall reflect the disclosure made, the vote thereon and, where applicable, the abstention from voting and participation, and whether a quorum is present. This Corporation may also adopt policies from time to time more clearly setting forth any requirements regarding disclosure and actions relating to duality or conflicts of interest.

## ARTICLE XI
## INDEMNIFICATION

**11.1    DEFINITIONS.**   For the purposes of this Article XI:

**11.1.1** "Director" means an individual who is or was a Director of the Corporation or an individual who, while a Director of the Corporation, is or was serving at the Corporation's request as a Director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plans, or other enterprise. A Director is considered to be serving an employee

PHS_BK-000657

benefit plan at the Corporation's request if the Director's duties to the Corporation also impose duties on, or otherwise involve services by, the Director to the plan or to participants in or beneficiaries of the plan. "Director" includes, unless the context requires otherwise, the estate or personal representative of a Director.

**11.1.2** "Liability" means the obligation to pay a judgment, settlement, penalty or fine, including an excise tax assessment with respect to an employee benefit plan, or reasonable expenses incurred with respect to a proceeding.

**11.1.3** "Official Capacity" means:

(i) when used with respect to a Director, the office of Director in the Corporation; and

(ii) when used with respect to an officer, the elective or appointive office in the Corporation held by that individual.

**11.1.4** "Proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal.

**11.2    ACTION NOT BY OR IN THE RIGHT OF THE CORPORATION.** The Corporation shall indemnify any Director or officer who was or is a party or is threatened to be made a party to any proceeding (other than an action by or in the right of the Corporation) by reason of the fact that he/she is or was a Director or officer of the Corporation against judgments, penalties, fines, settlements and reasonable expenses, including attorneys' fees, actually and reasonably incurred by the Director or officer in connection with the proceeding if he/she conducted himself/herself in good faith and:

**11.2.1** in the case of conduct in his/her own official capacity with the Corporation, he/she reasonably believed his/her conduct to be in the Corporation's best interests; or

**11.2.2** in all other cases, he/she reasonably believed his/her conduct to be at least not opposed to the Corporation's best interests; and

**11.2.3** in the case of any criminal proceeding, he/she had no reasonable cause to believe his/her conduct was unlawful.

The termination of any proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, be determinative that the Director or officer did not meet the requisite standard of conduct set forth in this Section 11.2.

PHS_BK-000658

**11.3   ACTION BY OR IN THE RIGHT OF THE CORPORATION.**   The Corporation shall indemnify any Director or officer who was or is a party or is threatened to be made a party to any proceeding by or in the right of the Corporation by reason of the fact that he/she is or was a Director or officer of the Corporation against reasonable expenses, including attorneys' fees, actually and reasonably incurred by him/her in connection with such proceeding if he/she conducted himself/herself in good faith and:

    **11.3.1** in the case of conduct in his/her official capacity with the Corporation, he/she reasonably believed his/her conduct to be in the Corporation's best interests; or

    **11.3.2** in all other cases, he/she reasonably believed his/her conduct to be at least not opposed to the Corporation's best interests, provided that no indemnification shall be made pursuant to this Section 11.3 in respect of any proceeding in which such person shall have been adjudged to be liable to the Corporation.

**11.4   LIMITATION ON INDEMNIFICATION.**   A Director or officer shall not be indemnified under this Article in respect of any proceeding, whether or not involving action in his/her official capacity, in which he/she shall have been adjudged to be liable on the basis that the Director or officer personally received a benefit in money, property, or services to which the Director or officer was not legally entitled.

**11.5   EXPENSES IF SUCCESSFUL.**   To the extent that the Director or officer of the Corporation has been successful on the merits or otherwise in the defense of any proceeding referred to in this Article, he/she shall be indemnified against reasonable expenses, including attorneys' fees, incurred by him/her in connection with the proceeding. The Corporation shall provide notice to the Member prior to such indemnification.

**11.6   AUTHORIZATION.**   No indemnification shall be made by the Corporation unless authorized in the specific case upon a determination that the indemnification of the Director or officer is permissible in the circumstances because he/she has met the applicable standard of conduct set forth in this Article. Such determination shall be made: (a) by the Board of Directors by a majority vote of a quorum consisting of Directors not at the time parties to the proceeding; (b) if a quorum is unobtainable, by majority vote of a committee duly designated by the Board of Directors, in which designation Directors who are parties may participate, consisting solely of two or more Directors not at the time parties to the proceeding; (c) in a written opinion by legal counsel (other than an attorney or a firm having associated with it an attorney, who has been retained by or who has performed services within the past three (3) years for the Corporation or any party to be indemnified) selected by the Board of Directors or a committee thereof by vote as set forth in (a) or (b) of this Section; or (d) by the Member.

**11.7   ADVANCE PAYMENT.**   Reasonable expenses incurred in defending a proceeding may be paid by the Corporation in advance of final disposition of the proceeding: (a) upon receipt by the Corporation of a written undertaking by or on behalf of the Director or officer to repay such amount if it shall ultimately be determined that the Director or officer has not met the standard of conduct necessary for indemnification by the Corporation as authorized

PHS_BK-000659

by this Article; and (b) upon receipt by the Corporation of a written affirmation by the Director or officer of his/her good faith belief that he/she has met the standard of conduct necessary for indemnification by the Corporation as authorized in this Article.

**11.8   INSURANCE.**  The Corporation shall have the power to purchase and maintain insurance on behalf of an individual who is or was a Director or officer of the Corporation or who, while a Director or officer of the Corporation, is or was serving at the request of the Corporation as a Director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against liabilities asserted against or incurred by the individual in that capacity or arising from the individual's status as a Director, officer, employee, or agent, whether or not the Corporation would have the power to indemnify the individual against the same liability under these Bylaws or the Washington Nonprofit Corporation Act.

**11.9   NONEXCLUSIVITY.**   The indemnification and advancement of expenses provided by, or granted pursuant to this Article of these Bylaws shall not be deemed exclusive of any other rights to which any present or former Director or officer of the Corporation may be entitled by contract, policy or otherwise under applicable law.

**11.10  PERMISSIVE INDEMNIFICATION.**  The Board of Directors may establish policies to indemnify members of the medical staff, community boards, employees and others providing service to the Corporation.

**11.11  WASHINGTON LAW.**  Notwithstanding the indemnification provided under this Article of the Bylaws, indemnification to any person by the Corporation shall only occur in compliance with the Washington Nonprofit Corporation Act.

### ARTICLE XII
### FISCAL YEAR

The fiscal year of this Corporation shall commence on January 1 and end on December 31 of each year.

### ARTICLE XIII
### PROHIBITION AGAINST SHARING IN CORPORATE EARNINGS

No Member, Director, officer, employee, committee member or other person connected or affiliated with this Corporation, and no other private individual, shall receive at any time any of the net earnings or pecuniary profit from the operations of this Corporation, provided that this Corporation shall not prevent the payment to any such person of such reasonable compensation for services rendered to or for this Corporation in effecting any of its purposes as such compensation shall be fixed by the Board of Directors; and no such person or persons shall possess any proprietary right in or to the property of this Corporation or be entitled to share in the distribution of any of the corporate assets upon dissolution of this Corporation.

PHS_BK-000660

## ARTICLE XIV
## DISSOLUTION OF THE CORPORATION

Upon dissolution of the Corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation to Providence, its sole corporate Member, or to its designee, provided that such recipient entity is organized and operated exclusively for charitable, educational, religious or scientific purposes, and qualifies as an exempt organization under 501(c)(3) of the Internal Revenue Code ("Code")(or the corresponding provision of any future United States Internal Revenue Law). If, at the time of dissolution, Providence is in not existence, is not an exempt organization under the Code, or makes no such designation, the Board of Directors shall dispose of all the corporate assets to Providence Ministries or its designee, provided that such recipient entity is still in existence and is organized and operated exclusively for charitable, educational, religious or scientific purposes, and qualifies as an exempt organization under the Code. If, at the time of dissolution, Providence Ministries is not in existence, is not an exempt organization under the Code, or makes no such designation, the Board of Directors shall dispose of all the corporate assets to any other organization(s) selected by the Sisters of Providence, General Administration, Montreal, provided that each such recipient entity is organized and operated exclusively for charitable, educational, religious or scientific purposes and qualifies as an exempt organization under the Code.

## ARTICLE XV
## INVESTMENTS

Except as otherwise provided in the Articles of Incorporation of the Corporation, this Corporation shall have the right to retain all or any part of any securities or property acquired by it in whatever manner, and to invest and reinvest any funds held by it, according to the judgment of the Board of Directors.

## ARTICLE XVI
## EXEMPT ACTIVITIES

Notwithstanding any other provisions of these Bylaws, no Member, Director, officer, employee or agent of this Corporation shall take any action or carry out any activity by or on behalf of the Corporation not permitted to be taken or carried on without penalty by an organization exempt from federal taxation as now exists or as may hereafter be amended.

## ARTICLE XVII
## AMENDMENTS

No amendment of these Bylaws shall be effective without the approval of the Member. In addition, the Board of Directors shall regularly review these Bylaws and recommend any revisions to these Bylaws to conform to applicable requirements of state or federal law and/or accreditation standards.

RESTATED BYLAWS
PH&S-WA
Effective December 31, 2009

PHS_BK-000661

## ARTICLE XVIII
## MISCELLANEOUS PROVISIONS

**18.1    DEPOSITORIES.** All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, financial institutions, mutual funds or other depositories as the Board of Directors may designate.

**18.2    CHECKS.** All checks, drafts, or other orders for the payment of money issued in the name of the Corporation shall be signed by such officer or officers or person or persons (whether or not officers of Corporation) in such manner as shall from time to time be determined by the Board of Directors.

**18.3    CONTRACTS AND INSTRUMENTS.** Subject to any limitations contained in these Bylaws or by resolution of the Board of Directors, all deeds, mortgages, bonds and other contracts or instruments of the Corporation shall be signed on behalf of this Corporation by the President/Chief Executive Officer or any other officer.

**18.4    AGENTS AND REPRESENTATIVES.** The Board of Directors may appoint such agents and representatives of the Corporation with such powers and with the authority to perform such acts or duties on behalf of the Corporation as the Board of Directors may deem appropriate, consistent with these Bylaws, the Articles of Incorporation of the Corporation and applicable law.

**18.5    ELECTRONIC COMMUNICATIONS.** To the fullest extent permitted by law, the Member, Board of Directors and Board Committees may utilize electronic communications such as e-mail, faxes and other electronic communications for purposes of distributing notices of meetings, voting by ballot or otherwise, executing unanimous written consents as otherwise authorized by these Bylaws, and for all other legitimate purposes of communicating.

\*          \*          \*          \*          \*

Dated this  15th  day of ____Sept.____, 200 9 to be effective as of 11:59 pm on December 31, 2009.

_____
Chair of the Board of Directors

**ATTEST:**

_____
Secretary of the Corporation

RESTATED BYLAWS
PH&S-WA
Effective December 31, 2009

14

PHS_BK-000662

## RESTATED BYLAWS
## OF
## PROVIDENCE HEALTH & SERVICES—WASHINGTON
### ARTICLE I
### THE CORPORATION IN GENERAL

**1.1** **NAME AND DESCRIPTION.** The name of the corporation shall be Providence Health & Services—Washington ("Corporation"). It is a nonprofit corporation organized and existing under the laws of the State of Washington. It is a Roman Catholic institution, sponsored by the Sisters of Providence, Mother Joseph Province.

**1.2** **PURPOSES.** The purposes for which the Corporation has been formed are as follows:

    **1.2.1** To establish, operate, manage and maintain for charitable purposes, hospitals, nursing homes, and other health care, educational, and social service facilities and programs designed to meet the health, educational and social needs of all people;

    **1.2.2** To provide scientific research, educational, charitable and such other activities, services and programs related to its health care facilities and services;

    **1.2.3** To engage in other charitable works which are consistent with the objectives of the Corporation and the mission and values of the Sisters of Providence, Mother Joseph Province, as appropriate; and

    **1.2.4** To do any and all other things in furtherance of these purposes which are consistent with the laws of the State of Washington, the Constitutions and Directory of the Sisters of Providence, Mother Joseph Province, as well as the Providence mission and values and the Roman Catholic moral tradition as articulated in documents such as *The Ethical and Religious Directives for Catholic Health Care Services.*

**1.3** **LOCATION.** The principal office of the Corporation shall be located at 1801 Lind Avenue SW #9016, Renton, Washington 98057-9016.

### ARTICLE II
### MEMBER

**2.1** **MEMBER.** The sole Member of the Corporation is Providence Health & Services ("Providence").

**2.2** **POWERS OF THE MEMBER.** In addition to all matters required by the Articles of Incorporation or other provisions of these Bylaws which are required to be approved by Providence, and subject to the reserved rights held by the Members of Providence, Providence shall have the right to recommend to the Providence Members the following actions with respect to this Corporation and of any corporation or other legal entity of which this Corporation is the sole or controlling member or shareholder (except as otherwise noted below):

PHS_BK-000663

**2.2.1**   To adopt or change the mission, philosophy, or values;

**2.2.2**   To amend or repeal the Articles of Incorporation or Bylaws;

**2.2.3**   As to this Corporation, to fix the number of Directors, appoint the Board of Directors and to remove such Directors at any time with or without cause;

**2.2.4**   To appoint and remove the President/Chief Executive Officer of this Corporation and to remove such President/Chief Executive Officer, with or without cause, after requesting a recommendation from the Board of Directors;

**2.2.5**   To approve the acquisition of assets, the incurrence of indebtedness or the lease, sale, transfer, assignment, or encumbering of the assets, if the amount involved in any such transaction is in excess of an amount specified from time to time by resolution of the Providence Members and to approve the sale or transfer of other property which may have either historical or religious significance;

**2.2.6**   To approve the dissolution, liquidation, consolidation or merger with another corporation or entity;

**2.2.7**   To approve on a consolidated system-wide basis the annual operating and capital budgets and approval of any deviations from such budget in excess of an amount or percentage specified from time to time by resolution of the Providence Members;

**2.2.8**   To appoint the certified public accountants after receiving the recommendation of the Board of Directors and to receive the annual audit report from such accountants; and

**2.2.9**   To approve the initiation or closure of any major work.

## ARTICLE III
## BOARD OF DIRECTORS OF THE CORPORATION

**3.1**   **POWER OF THE BOARD OF DIRECTORS.**   The Board of Directors shall exercise general governance and control of the mission and business affairs of the Corporation and shall have and exercise all of the powers which may be exercised or performed by the Corporation under the laws of the State of Washington and these Bylaws, with due regard for the powers reserved to the Member of the Corporation as stated in Article II of these Bylaws.

**3.2**   **COMPOSITION OF THE BOARD.**   The Board of Directors of this Corporation shall consist of the same individuals as those then currently serving on the Board of Directors of its sole Member, Providence.   Appointment, term, and removal of a Board of Director from this Corporation's sole Member, Providence, shall constitute appointment, term of office, and removal from such individual's service as a Board of Director of this Corporation.   In the event a Member of the Board of Directors of Providence shall resign, such resignation shall automatically cause the resignation of such Board of Director as a Director of this Corporation.

PHS_BK-000664

**3.3** **CHAIRPERSON OF THE BOARD.** The Chairperson of the Board of Directors of this Corporation shall be the same individual then serving as Chairperson of the Board of this Corporation's sole Member, Providence. Such Chairperson of the Board of this Corporation shall serve in such capacity so long as such individual is serving as the Chairperson of the Board of Providence.

**3.4** **ACTING CHAIR.** Any individuals serving as the Acting Chair of the Board of Directors of this Corporation's sole Member, Providence, shall also serve as the Acting Chair of this Corporation.

**3.5** **MEETINGS AND PROCEDURAL RULES.**

**3.5.1 Annual Meeting.** The annual meeting of the Board of Directors shall be held by December 31 of each year. Such meeting shall be held at the principal office of the Corporation or at such place as may be designated from time to time by the Chairperson. The purposes of the annual meeting shall include, without limitation, electing officers as herein provided and transacting such other business as shall be necessary or desirable.

**3.5.2 Regular Meetings of the Board.** Regular meetings of the Board of Directors shall occur at least four (4) times a year at such time and place as the Directors shall provide by resolution.

**3.5.3 Special Meetings of the Board.** Special meetings of the Board of Directors may be called upon written request by the Member, two or more Directors, the Chairperson of the Board or the President/Chief Executive Officer.

**3.5.4 Notice of Board of Directors Meetings.** Written notice of all Board of Directors meetings shall be mailed by first class mail, personally delivered, or sent by electronic transmission pursuant to Section 18.5 to each Director at least five (5) days before the date of the meeting, which notice shall in the case of special meetings state the nature of the business to be taken up at the meeting. If mailed, such notice shall be deemed to be delivered when deposited in the U.S. Mail, postage prepaid, addressed to the Director at their address as it appears in the records of the Corporation.

**3.5.5 Quorum.** For all meetings of the Board of Directors (other than for action taken by unanimous written consent), a quorum shall be a simple majority of the Directors then serving unless a greater majority is required by law or by these Bylaws.

**3.5.6 Action by Unanimous Written Consent.** Waiver of notice of any Board meeting or any action required to be taken at a meeting of the Board of Directors, or any other action which may be taken at a meeting of the Board of Directors, may be taken without a meeting if a consent in writing, setting forth the actions so taken, is signed by all the Directors entitled to vote with respect to the subject matter thereof. Any consent signed by all the Directors shall have the same effect as a unanimous vote.

PHS_BK-000665

**3.5.7  Telephonic Meetings.**  Directors may participate in and act at any meeting of such Board by means of conference telephone, videoconference or similar communication equipment by which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting.

**3.5.8  Voting.**  Voting on any question or in any election may be by voice, unless the individual presiding at the meeting shall order, or a Director shall demand, that voting be by ballot.

**3.5.9  Manner of Acting.**  Each Director shall be entitled to one vote on all matters voted on at any meeting. Except as otherwise provided by law, the Articles of Incorporation, or these Bylaws, the act of a majority of the Directors present at the meeting at which a quorum is present shall be the act of the Board of Directors.

**3.5.10  Compensation/Reimbursement of Directors.**  Directors may receive reasonable compensation for their services as Directors, as determined from time to time by the Members.  Directors shall be reimbursed for reasonable expenses of attendance at meetings or when on other business of the Corporation.

**3.5.11  Board Evaluation.**  Under the direction of the Governance Committee, the Board of Directors shall annually evaluate their performance.

**3.6**  **PRESUMPTION OF ASSENT.**  Any Director who is present at a meeting of the Board of Directors at which action on any corporate matter is taken shall be conclusively presumed to have assented to the action taken unless (1) he/she abstains and his/her abstention is recorded in the minutes of the Corporation; (2) his/her dissent shall be entered in the minutes of the meeting; (3) he/she shall file his/her written dissent to such action with the person acting as the secretary of the meeting before the adjournment thereof; or (4) he/she shall forward such dissent by registered mail to the Secretary of the Corporation immediately after the adjournment of the meeting. The right to dissent shall not apply to a Director who voted in favor of an action.

## ARTICLE IV
## OFFICERS OF THE CORPORATION

**4.1**  **OFFICERS.**  The officers of the Corporation shall be the President/Chief Executive Officer, one or more Vice President(s), a Secretary and a Treasurer and such other officers as may be elected from time to time by the Board of Directors. The powers and duties of the officers shall be as set forth in these Bylaws and as otherwise designated from time to time by the Board of Directors, to the extent consistent with law, the Articles of Incorporation of the Corporation and these Bylaws. Any number of offices may be held by the same person except that the Secretary may not serve concurrently as the President.  The officers of this Corporation shall be the same individuals serving as the officers of this Corporation's sole Member, Providence.  In the event such officer either resigns or is otherwise removed as an officer of

PHS_BK-000666

Providence, such officer's office with this Corporation shall automatically terminate as of the effective date of their removal or resignation as an officer of Providence.

**4.2   PRESIDENT/CHIEF EXECUTIVE OFFICER.** The President/Chief Executive Officer shall be the chief executive officer of the Corporation and shall be the direct executive representative of the Board of Directors in the management of the Corporation. The President/Chief Executive Officer shall have and exercise general management and supervision of the affairs of the Corporation, subject to the reserved powers of the Member and the direction of the Board of Directors.

**4.3   VICE PRESIDENT(S).** The Vice President(s) shall perform such duties as are established from time to time by the Board and shall report to the President/Chief Executive Officer. In all other matters, the Vice President(s) shall function in accordance with the specific powers which have been delegated to them by the Board and/or the President/Chief Executive Officer.

**4.4   TREASURER.** The Treasurer shall have general charge and responsibility relating to the financial concerns of the Corporation. The Treasurer shall perform such other duties and functions as may from time to time be designated by the Board of Directors, subject to the overall control of such Board.  The Treasurer shall be responsible for causing an audited financial statement to be provided to the Member and to the Board of Directors at least annually.

**4.5   SECRETARY.** The Secretary shall be the custodian of and shall maintain the corporate books and records, the minutes of the meetings of the Board of Directors and assure that all required notices are duly given in accordance with these Bylaws, the Articles of Incorporation of the Corporation or as otherwise may be required by law. The Secretary shall, in general, perform all duties incident to the office of Secretary, subject to the control of the Board of Directors and shall do and perform such other duties as may be assigned from time to time by the Board of Directors.

**4.6   ASSISTANT TREASURERS AND ASSISTANT SECRETARIES.** The assistant treasurers and assistant secretaries shall perform such duties as shall be assigned to them by the Treasurer or Secretary, respectively, or by the President/Chief Executive Officer or the Board of Directors.

**4.7   ADDITIONAL OFFICERS.** The Board of Directors by resolution may create such additional and special offices as may be necessary or desirable in addition to those described herein and may by such resolution provide for the election by the Board of Directors of any person to perform the duties and exercise the authority of such office.

**4.8   DELEGATION.** The Board may delegate temporarily the powers and duties of any officer, in case of such officer's absence or for any other reason, to any other officer, and may authorize the delegation by an officer of any such officer's powers and duties to any agent or employee subject to the general supervision of such officer.

PHS_BK-000667

## ARTICLE V
## COMMITTEES OF THE BOARD

This Corporation shall have the same committees, committee members, and coterminous committee meetings with those committees established by this Corporation's sole Corporate Member, Providence. This Corporation's committees shall meet conterminously with the Providence Board committees established pursuant to the Providence Bylaws. The Board committee charters and other rules for functioning of such committees of this Corporation shall be identical to those of its sole Corporate Member, Providence.

## ARTICLE VI
## MINISTRIES

The Corporation shall be organized into such ministries ("Ministries") as the Board of Directors may determine from time to time. As designated from time to time by the Board of Directors and the President/Chief Executive Officer, appropriate management ("Designated Manager") shall be responsible for the various Ministries. In such capacity, the Designated Manager shall have authority for carrying out the general administration and management of such Ministries in accordance with all applicable resolutions of the Board of Directors, policies of this Corporation or of Providence ("System policies"), the Governance and Executive Management Authority and Shared Governance Accountability Matrix (the "Matrix") and the management reporting relationships that are in effect from time to time as determined by the President/Chief Executive Officer and the Board of Directors. In addition, the Designated Manager shall have authority to act on all matters relating to the medical staffs of the Ministries, subject to the authority delegated to the Community Ministry Board and further subject to the applicable medical staff bylaws and other System policies and resolutions relating to medical staff relationships that may be in effect from time to time. Each Designated Manager shall be appointed in accordance with System policies and the Matrix and shall be designated by such other title or designation as may be determined by the President/Chief Executive Officer.

## ARTICLE VII
## MEDICAL STAFF

**7.1    MEDICAL STAFF.**    Each hospital owned and/or operated by this Corporation shall have a medical staff consisting of those licensed physicians, dentists and other independent licensed practitioners as the Board of Directors may permit in accordance with the provisions of applicable state law, accreditation standards and the provisions of the medical staff bylaws for each such hospital.

Each long term care facility or other health care facility or division of this Corporation shall establish necessary or appropriate policies, guidelines, procedures, or bylaws where applicable, as are appropriate for the institutional management and maintenance of quality patient care to be provided by licensed physicians, dentists or other independent licensed practitioners.

PHS_BK-000668

**7.2   QUALIFICATIONS.** Subject to any delegated authority pursuant to §7.5 and §8.2 hereof, the Board of Directors shall have final authority over appointments and reappointments of medical staff members, over the granting of and delineation of clinical and practice privileges, and over the revocation or other curtailment of medical staff membership and/or clinical or practice privileges. Each medical staff shall evaluate the professional competence and qualifications of applicants for appointment or reappointment and for the granting of clinical privileges, and shall make recommendations concerning the suitability of all such applicants. Each medical staff shall in like manner evaluate all cases where revocation, curtailment, suspension or other limitation of staff membership or privileges is being considered and shall recommend action to the administrator relating to such matter. The Board of Directors shall only take action on appointments, reappointments, revocations or curtailment of membership and/or privileges after receiving and considering the recommendation of the medical staff except in those cases where such recommendation is being unreasonably delayed or where quality of patient care concerns warrant summary or other immediate action. Designated management may be assigned authority to act on behalf of the Board of Directors consistent with these Bylaws, applicable System policies and corporate resolutions and medical staff bylaws.

**7.3   MEDICAL STAFF BYLAWS.** Subject to approval of the Board of Directors, each medical staff is responsible for the development, adoption and periodic review and revision of medical staff bylaws, rules and regulations that are consistent with hospital and System policies, The Joint Commission standards, and applicable federal and state laws and regulations. Such bylaws shall define the organization of the medical staff and establish procedures for evaluations and recommendations concerning appointments, reappointments, revocation or curtailment of staff membership or privileges, procedures for formal and effective medical staff participation in formulating hospital policies and standards of patient care and such other matters as the medical staff and the hospital shall deem appropriate for inclusion in such medical staff bylaws, rules and regulations. The medical staff bylaws and any amendment thereto are subject to, and effective upon, approval by the Board of Directors.

No person shall be denied medical staff membership or clinical privileges in any institution of this Corporation on the basis of sex, race, creed, color or national origin or on the basis of any other criteria unrelated to professional competence, patient care, the purpose, needs and capabilities of the hospital and/or the community in which it is located or other criteria reasonably related to professional standards, hospital efficiency, or other appropriate criteria as may be established from time to time.

Medical staff bylaws shall include appropriate provisions requiring all members of the medical staff to conform to the Providence mission and core values and the Roman Catholic moral tradition as articulated in documents such as *The Ethical and Religious Directives for Catholic Health Care Services* as may be amended from time to time while such medical staff member is practicing in any hospital, health care facility, program or service operated by this Corporation.

**7.4   RELATIONSHIP OF RESPONSIBILITIES OF BOARD OF DIRECTORS AND MEDICAL STAFF.** The Board of Directors holds the medical staff accountable for the

PHS_BK-000669

professional care practiced in each hospital. Each medical staff shall regularly review and analyze its clinical experience and shall be responsible for participating in quality management activities as mandated from time to time by The Joint Commission or other state licensing bodies of healthcare organizations, by applicable laws and regulations, by the medical staff bylaws, by System policies and procedures and by this Board of Directors. Adequate, accurate and timely medical records shall be prepared and maintained for all patients. A report of the results of the quality review and analysis shall be regularly submitted to the Board in accordance with System policy and in a manner designed to assure maximum protection under applicable provisions of state law regarding the confidentiality of quality assurance and peer review information.

     7.5   **DELEGATION OF MEDICAL STAFF AUTHORITY.** The Board of Directors may, from time to time, delegate its authority with respect to medical staff matters as provided for in § 8.2 of these Bylaws to the Community Ministry Boards  In such event, the Community Ministry Boards shall have all authority of the Board of Directors as stated in these Bylaws with respect to medical staff matters and shall function as the governing body of this Corporation for such matters, consistent with applicable requirements of federal and state laws and regulations, meeting Medicare conditions of participation requirements, and fulfilling compliance with The Joint Commission's requirements.

**ARTICLE VIII**
**SHARED GOVERNANCE**

     8.1   **COMMUNITY MINISTRY BOARDS.** This Corporation shares governance with its Community Ministry Boards as set forth in the Community Ministry Board Bylaws, as approved by the Board of Directors.   Each of the Corporation's Ministries, as determined appropriate by the Board of Directors shall establish a Community Ministry Board to assist, consult with and advise management and this Corporation. The Community Ministry Board Bylaws shall be uniform for all Providence Ministries.

     8.2   **DELEGATED AUTHORITY.** The Board of Directors may, from time to time, delegate certain Board responsibilities to the Community Ministry Boards as set forth in the Community Ministry Board Bylaws or by policy. In matters that have been delegated by the Board of Directors to the Community Ministry Boards, the Community Ministry Boards shall have full authority and be accountable to the Board of Directors with respect to the matters delegated and shall serve as the governing body of the Corporation's Ministries  for fulfilling such delegated responsibilities consistent with applicable federal and state laws and regulations, meeting Medicare conditions of participation requirements, and fulfilling compliance with The Joint Commission's requirements.

     8.3   **ADVICE AND COUNSEL.** The Community Ministry Board is responsible, as set forth in the Community Board Bylaws, for providing advice, counsel and direction to this Corporation for the Ministries for which it is accountable.

PHS_BK-000670

## ARTICLE IX
## VOTING UPON STOCK OF OTHER CORPORATIONS

Subject to the reserved rights set forth in Section 2.2, and unless otherwise ordered by the Board of Directors and subject to the direction, if any, given by the Board of Directors, any officer of this Corporation shall have full power and authority on behalf of the Corporation to vote either in person or by proxy at any meeting of stockholders of any corporation in which this Corporation may hold stock or otherwise have an opportunity to vote, and at such meeting may possess and exercise all the rights and powers incident to the ownership of such stock or membership which, as the owner thereof, this Corporation might have possessed and exercised if present.

## ARTICLE X
## DUALITY OF INTEREST

Any Member, Director, officer, employee, Community Board member or committee member having an interest in a transaction, contract or other matter presented to the Board of Directors or a committee thereof for authorization, approval or ratification shall provide prompt, full and frank disclosure of his or her interest to the Board or committee prior to its acting on such contract or transaction. The body to which such disclosure is made shall determine, by a majority vote, whether a duality or conflict of interest exists or can reasonably be construed to exist. If a conflict is deemed to exist, such person shall not vote on, nor use his or her personal influence on, nor participate (other than to present factual information or to respond to questions) in the discussions or deliberations with respect to, such contract or transactions. Such person may be counted in determining the existence of a quorum at any meeting where the contract or transaction is under discussion or is being voted upon. The minutes of the meeting shall reflect the disclosure made, the vote thereon and, where applicable, the abstention from voting and participation, and whether a quorum is present. This Corporation may also adopt policies from time to time more clearly setting forth any requirements regarding disclosure and actions relating to duality or conflicts of interest.

## ARTICLE XI
## INDEMNIFICATION

11.1    **DEFINITIONS.** For the purposes of this Article XI:

11.1.1 "Director" means an individual who is or was a Director of the Corporation or an individual who, while a Director of the Corporation, is or was serving at the Corporation's request as a Director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plans, or other enterprise. A Director is considered to be serving an employee benefit plan at the Corporation's request if the Director's duties to the Corporation also impose duties on, or otherwise involve services by, the Director to the plan or to

PHS_BK-000671

participants in or beneficiaries of the plan. "Director" includes, unless the context requires otherwise, the estate or personal representative of a Director.

**11.1.2** "Liability" means the obligation to pay a judgment, settlement, penalty or fine, including an excise tax assessment with respect to an employee benefit plan, or reasonable expenses incurred with respect to a proceeding.

**11.1.3** "Official Capacity" means:

> **(i)** when used with respect to a Director, the office of Director in the Corporation; and

> **(ii)** when used with respect to an officer, the elective or appointive office in the Corporation held by that individual.

**11.1.4** "Proceeding" means any threatened, pending, or completed action, suit, or proceeding, whether civil, criminal, administrative, or investigative and whether formal or informal.

**11.2   ACTION NOT BY OR IN THE RIGHT OF THE CORPORATION.** The Corporation shall indemnify any Director or officer who was or is a party or is threatened to be made a party to any proceeding (other than an action by or in the right of the Corporation) by reason of the fact that he/she is or was a Director or officer of the Corporation against judgments, penalties, fines, settlements and reasonable expenses, including attorneys' fees, actually and reasonably incurred by the Director or officer in connection with the proceeding if he/she conducted himself/herself in good faith and:

> **11.2.1** in the case of conduct in his/her own official capacity with the Corporation, he/she reasonably believed his/her conduct to be in the Corporation's best interests; or

> **11.2.2** in all other cases, he/she reasonably believed his/her conduct to be at least not opposed to the Corporation's best interests; and

> **11.2.3** in the case of any criminal proceeding, he/she had no reasonable cause to believe his/her conduct was unlawful.

The termination of any proceeding by judgment, order, settlement, conviction, or upon a plea of nolo contendere or its equivalent, shall not, of itself, be determinative that the Director or officer did not meet the requisite standard of conduct set forth in this Section 11.2.

**11.3   ACTION BY OR IN THE RIGHT OF THE CORPORATION.** The Corporation shall indemnify any Director or officer who was or is a party or is threatened to be made a party to any proceeding by or in the right of the Corporation by reason of the fact that he/she is or was a Director or officer of the Corporation against reasonable expenses, including

PHS_BK-000672

attorneys' fees, actually and reasonably incurred by him/her in connection with such proceeding if he/she conducted himself/herself in good faith and:

      **11.3.1** in the case of conduct in his/her official capacity with the Corporation, he/she reasonably believed his/her conduct to be in the Corporation's best interests; or

      **11.3.2** in all other cases, he/she reasonably believed his/her conduct to be at least not opposed to the Corporation's best interests, provided that no indemnification shall be made pursuant to this Section 11.3 in respect of any proceeding in which such person shall have been adjudged to be liable to the Corporation.

      **11.4  LIMITATION ON INDEMNIFICATION.** A Director or officer shall not be indemnified under this Article in respect of any proceeding, whether or not involving action in his/her official capacity, in which he/she shall have been adjudged to be liable on the basis that the Director or officer personally received a benefit in money, property, or services to which the Director or officer was not legally entitled.

      **11.5  EXPENSES IF SUCCESSFUL.** To the extent that the Director or officer of the Corporation has been successful on the merits or otherwise in the defense of any proceeding referred to in this Article, he/she shall be indemnified against reasonable expenses, including attorneys' fees, incurred by him/her in connection with the proceeding. The Corporation shall provide notice to the Member prior to such indemnification.

      **11.6  AUTHORIZATION.** No indemnification shall be made by the Corporation unless authorized in the specific case upon a determination that the indemnification of the Director or officer is permissible in the circumstances because he/she has met the applicable standard of conduct set forth in this Article. Such determination shall be made: (a) by the Board of Directors by a majority vote of a quorum consisting of Directors not at the time parties to the proceeding; (b) if a quorum is unobtainable, by majority vote of a committee duly designated by the Board of Directors, in which designation Directors who are parties may participate, consisting solely of two or more Directors not at the time parties to the proceeding; (c) in a written opinion by legal counsel (other than an attorney or a firm having associated with it an attorney, who has been retained by or who has performed services within the past three (3) years for the Corporation or any party to be indemnified) selected by the Board of Directors or a committee thereof by vote as set forth in (a) or (b) of this Section; or (d) by the Member.

      **11.7  ADVANCE PAYMENT.** Reasonable expenses incurred in defending a proceeding may be paid by the Corporation in advance of final disposition of the proceeding: (a) upon receipt by the Corporation of a written undertaking by or on behalf of the Director or officer to repay such amount if it shall ultimately be determined that the Director or officer has not met the standard of conduct necessary for indemnification by the Corporation as authorized by this Article; and (b) upon receipt by the Corporation of a written affirmation by the Director or officer of his/her good faith belief that he/she has met the standard of conduct necessary for indemnification by the Corporation as authorized in this Article.

PHS_BK-000673

**11.8   INSURANCE.**   The Corporation shall have the power to purchase and maintain insurance on behalf of an individual who is or was a Director or officer of the Corporation or who, while a Director or officer of the Corporation, is or was serving at the request of the Corporation as a Director, officer, partner, trustee, employee, or agent of another foreign or domestic corporation, partnership, joint venture, trust, employee benefit plan, or other enterprise, against liabilities asserted against or incurred by the individual in that capacity or arising from the individual's status as a Director, officer, employee, or agent, whether or not the Corporation would have the power to indemnify the individual against the same liability under these Bylaws or the Washington Nonprofit Corporation Act.

**11.9   NONEXCLUSIVITY.**   The indemnification and advancement of expenses provided by, or granted pursuant to this Article of these Bylaws shall not be deemed exclusive of any other rights to which any present or former Director or officer of the Corporation may be entitled by contract, policy or otherwise under applicable law.

**11.10   PERMISSIVE INDEMNIFICATION.**   The Board of Directors may establish policies to indemnify members of the medical staff, community boards, employees and others providing service to the Corporation.

**11.11   WASHINGTON LAW.**   Notwithstanding the indemnification provided under this Article of the Bylaws, indemnification to any person by the Corporation shall only occur in compliance with the Washington Nonprofit Corporation Act.

## ARTICLE XII
## FISCAL YEAR

The fiscal year of this Corporation shall commence on January 1 and end on December 31 of each year.

## ARTICLE XIII
## PROHIBITION AGAINST SHARING IN CORPORATE EARNINGS

No Member, Director, officer, employee, committee member or other person connected or affiliated with this Corporation, and no other private individual, shall receive at any time any of the net earnings or pecuniary profit from the operations of this Corporation, provided that this Corporation shall not prevent the payment to any such person of such reasonable compensation for services rendered to or for this Corporation in effecting any of its purposes as such compensation shall be fixed by the Board of Directors; and no such person or persons shall possess any proprietary right in or to the property of this Corporation or be entitled to share in the distribution of any of the corporate assets upon dissolution of this Corporation.

PHS_BK-000674

## ARTICLE XIV
## DISSOLUTION OF THE CORPORATION

Upon dissolution of the corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the corporation to Providence, its sole corporate Member, provided Providence is still in existence and qualifies as an exempt organization under the Code. If, at the time of dissolution, Providence is not an exempt organization under the Code, or is no longer in existence, the Board of Directors shall dispose of all the corporate assets to the Sisters of Providence - Mother Joseph Province, or to its designee, provided such designated entity is organized and operated exclusively for charitable, educational, religious or scientific purposes and qualifies as an exempt organization under the Code (or the corresponding provision of any future United States Internal Revenue Law). If the Sisters of Providence-Mother Joseph Province is not in existence or makes no such designation, the Board of Directors shall dispose of all of the assets to any other organization(s) selected by the Sisters of Providence, General Administration, Montreal, provided that each such organization qualifies at that time for exemption under the Code.

## ARTICLE XV
## INVESTMENTS

Except as otherwise provided in the Articles of Incorporation of the Corporation, this Corporation shall have the right to retain all or any part of any securities or property acquired by it in whatever manner, and to invest and reinvest any funds held by it, according to the judgment of the Board of Directors.

## ARTICLE XVI
## EXEMPT ACTIVITIES

Notwithstanding any other provisions of these Bylaws, no Member, Director, officer, employee or agent of this Corporation shall take any action or carry out any activity by or on behalf of the Corporation not permitted to be taken or carried on without penalty by an organization exempt from federal taxation as now exists or as may hereafter be amended.

## ARTICLE XVII
## AMENDMENTS

No amendment of these Bylaws shall be effective without the approval of the Member. In addition, the Board of Directors shall regularly review these Bylaws and recommend any revisions to these Bylaws to conform to applicable requirements of state or federal law and/or accreditation standards.

PHS_BK-000675

## ARTICLE XVIII
## MISCELLANEOUS PROVISIONS

**18.1    DEPOSITORIES.**  All funds of the Corporation not otherwise employed shall be deposited from time to time to the credit of the Corporation in such banks, financial institutions, mutual funds or other depositories as the Board of Directors may designate.

**18.2    CHECKS.**  All checks, drafts, or other orders for the payment of money issued in the name of the Corporation shall be signed by such officer or officers or person or persons (whether or not officers of Corporation) in such manner as shall from time to time be determined by the Board of Directors.

**18.3    CONTRACTS AND INSTRUMENTS.**  Subject to any limitations contained in these Bylaws or by resolution of the Board of Directors, all deeds, mortgages, bonds and other contracts or instruments of the Corporation shall be signed on behalf of this Corporation by the President/Chief Executive Officer or such other officers as may be designated by the Board from time to time.

**18.4    AGENTS AND REPRESENTATIVES.**  The Board of Directors may appoint such agents and representatives of the Corporation with such powers and with the authority to perform such acts or duties on behalf of the Corporation as the Board of Directors may deem appropriate, consistent with these Bylaws, the Articles of Incorporation of the Corporation and applicable law.

**18.5    ELECTRONIC COMMUNICATIONS.**  To the fullest extent permitted by law, the Member, Board of Directors and Board Committees may utilize electronic communications such as e-mail, faxes and other electronic communications for purposes of distributing notices of meetings, voting by ballot or otherwise, executing unanimous written consents as otherwise authorized by these Bylaws, and for all other legitimate purposes of communicating.

*          *          *          *          *

PHS_BK-000676

Dated this 5th day of September, 2008

ATTEST:

_____
Secretary of the Corporation

G:\Legal\WORD\Articles+Bylaws Change 2008\PH&S-WA New Restated Bylaws(9-08).doc

PHS_BK-000677

RESTATED
PROVIDENCE HEALTH & SERVICES
COMMUNITY MINISTRY BOARD

UNIFORM BYLAWS
(Approved by PH&S Board 9-15-06)

## ARTICLE I
## PREAMBLE

Providence Health & Services ("Providence"), through its nonprofit, tax-exempt affiliates, owns and operates health care organizations in Alaska, California, Montana, Oregon and Washington, and has established this Community Ministry Board (the "Community Board") in recognition of the need for assistance and counsel from qualified persons representative of the local communities served by the Providence ministries listed in Exhibit A, attached (the "Ministries"). Each member appointed to the Community Board accepts such appointment with the express intention of assisting Providence in carrying out its mission of providing quality health care and improving community health and wellness through the Ministries.

Providence seeks to provide effective governance through a shared governance model with the Community Board, and these bylaws describe how governance is shared.

## ARTICLE II
## PURPOSE AND ROLE OF THE COMMUNITY BOARD

The Community Board shall provide leadership in operational performance, strategic development, and oversight of the Ministries. The Community Board shall have and exercise the following delegated authority and shared governance roles as outlined in Sections 2.1 and 2.2 with respect to the Ministries. The Community Board shall exercise these duties in furtherance of the mission and values of Providence, in the spirit of shared governance, and consistent with applicable Providence policies and directives, the Shared Governance and Management Authority and Responsibility Matrix (the "Matrix"), the Roman Catholic moral tradition as articulated in documents such as *The Ethical and Religious Directives for Catholic Health Care Services* and applicable legal, regulatory, governmental, licensing and accrediting requirements. In fulfilling the delegated authority and shared governance roles, the Community Board shall work with and report through the chief executive with primary responsibility for the Ministries ("Local Executive").

**2.1.   DELEGATED AUTHORITY.** The Community Board has responsibility authority and accountability for:

**2.1.1.**   Quality management and performance improvement;

**2.1.2.** Appointments, reappointments, suspension and termination of membership and clinical privileges for organized medical staffs in the Ministries ("Medical

Page 1 of 13

PHS_BK-000678

Staffs"), including reviewing and acting on disciplinary proceedings, and provider credentialing in non-acute care Ministries;

**2.1.3.** Medical Staff Bylaws, Rules, Regulations and Policies;

**2.1.4.** Medical Staff issues as may be presented from time to time to the Community Board;

**2.1.5.** Patient, staff and employee safety;

**2.1.6.** Community health care needs assessments;

**2.1.7.** Hospital auxiliaries, service leagues, and other volunteer programs, provided any bank accounts for such programs shall be under the direction and control of the local chief financial officer;

**2.1.8.** Patient grievances;

**2.1.9.** Mission integration and effectiveness;

**2.1.10.** Patient, physician and employee satisfaction; and

**2.1.11.** Other responsibilities as may be delegated by the Board of Providence from time to time.

**2.2.** **ADVICE AND COUNSEL.** The Community Board shall provide advice, counsel and direction to Providence with respect to:

**2.2.1.** Community relations;

**2.2.2.** Financial performance and strategic direction, compliance, strategic plans, financial plans, annual budgets, joint ventures, material unbudgeted requests for expenditures, evaluation of existing health services and programs, termination of unfeasible programs and development of new services, and other matters as may be requested from time to time by Providence;

**2.2.3.** Community Board evaluation;

**2.2.4.** Community Board recruitment; and

**2.2.5.** Participate in the selection, evaluation and termination of the Local Executive.

**ARTICLE III**
**COMMUNITY BOARD MEMBERS**

PHS_BK-000679

**3.1.** **MEMBERSHIP.** The Community Board shall have not less than 7 nor more than 25 voting members ("Directors"). The actual number will be determined by the Community Board. Using the selection criteria attached as Exhibit B and based on the recommendation of the Local Executive, the Community Board shall appoint Directors to the Community Board. Recognizing the important role of physicians, the Community Board will actively seek to include physicians on the Community Board. A Director may be removed by the Providence Board, based on the recommendation of the applicable executive after consultation with the Community Board and the Local Executive, if the Providence Board determines it is in the best interests of the Community Board and the Ministries.

**3.2** **TERM OF SERVICE.** The Directors shall at all times be divided into three groups, with each group having as near as possible an equal number. The terms of the Directors shall be staggered in such a manner as to assure that the term of each of the three groups will expire every third year with one such group of Directors being appointed each year. The terms of the initial Directors may be more or less than three years each in order to accomplish this objective. The term of each Director shall be for three years beginning on the first day of the month following his/her appointment and terminating three years thereafter. A Director may not serve more than three consecutive full terms on the Community Board without at least a one-year break in service. Notwithstanding the foregoing, however, the Community Board may extend the term of any Director to allow the Community Board to select a replacement for such Director. Further, a Director who fills the unexpired term of another Director shall not be precluded from serving three three-year terms beyond the expiration of the unexpired term he/she filled.

**3.3** **RESIGNATION.** A Director may resign at any time by giving written notice to the Chair of the Community Board.

### ARTICLE IV
### MEETINGS

**4.1.** **REGULAR MEETINGS OF THE BOARD.** Regular meetings of the Community Board shall occur at least four (4) times a year at such time and place as the Directors shall provide by resolution.

**4.2.** **SPECIAL MEETINGS OF THE BOARD.** Special meetings of the Community Board may be called upon written request by two or more Directors, the Chair of the Community Board or the Local Executive.

**4.3.** **NOTICE OF BOARD OF DIRECTORS MEETINGS.** Written notice of all Community Board meetings shall be mailed by first class mail, personally delivered, or sent by electronic transmission to each Director at least five (5) days before the date of the meeting, which notice shall in the case of special meetings state the nature of the business to be taken up at the meeting. If mailed, such notice shall be deemed to be delivered when deposited in the U.S. Mail in a sealed envelope, properly addressed, first class postage prepaid.

PHS_BK-000680

**4.4.    QUORUM.** For all meetings of the Community Board (other than for action taken by unanimous written consent), a quorum shall be a simple majority of the Directors then serving.

**4.5.    ACTION BY UNANIMOUS WRITTEN CONSENT.** Waiver of notice of any Community Board meeting or any action required to be taken at a meeting of the Community Board, or any other action which may be taken at a meeting of the Community Board, may be taken without a meeting if a consent in writing, setting forth the actions so taken, is signed by all the Directors entitled to vote with respect to the subject matter thereof. Any consent signed by all the Directors shall have the same effect as a unanimous vote.

**4.6.    TELEPHONIC MEETINGS.** Directors may participate in and act at any meeting of the Community Board by means of conference telephone, videoconference or similar communication equipment by which all persons participating in the meeting can hear each other at the same time. Participation in such a meeting shall constitute presence in person at the meeting.

**4.7.    VOTING.** Voting on any question or in any election may be by voice, unless the individual presiding at the meeting shall order, or a Director shall demand, that voting be by ballot.

**4.8.    MANNER OF ACTING.** Each Director shall be entitled to one vote on all matters voted on at any meeting. The act of a majority of the Directors present at the meeting at which a quorum is present shall be the act of the Community Board.

**4.9.    BOARD EVALUATION.** The Community Board shall annually evaluate their performance.

## ARTICLE V
## OFFICERS

**5.1.    ELECTION AND TERM.** Each year, the Community Board shall elect from its voting membership a Chair, Vice Chair and Secretary, each of whom shall serve immediately following that annual meeting through the next annual meeting or until their successor has been duly appointed. Any voting member may be elected to the same office for no more than three successive terms. In addition to the specified offices, the Community Board may, in like manner, elect persons to hold other offices it creates.

**5.2.    VACANCIES.** In the event of a vacancy in office, except that of Chair, the Chair shall appoint a voting member of the Community Board to serve in such office for the remainder of the unexpired term. In the event of a vacancy in the office of the Chair, the Vice Chair shall automatically succeed to such office for the remainder of the unexpired term.

PHS_BK-000681

5.3.   **DUTIES.**

5.3.1.   **Chair.** The Chair shall preside at meetings of the Community Board and shall be an ex officio member of all standing committees of the Community Board. The Chair shall represent the Community Board on matters concerning the services provided by the Service Area in relations with public and private entities unaffiliated with the Service Area. The Chair shall have other powers and duties consistent with the policies of Providence as may be prescribed by the Community Board from time to time.

5.3.2.   **Vice Chairperson.** The Vice Chair shall serve as the Chair when the Chair is unable to act or be present.

5.3.3.   **Secretary.** The Secretary shall cause notices and agenda of all meetings of the Community Board to be sent as required by these Bylaws, shall be responsible for the keeping of the minutes of all meetings and records of the Community Board, and shall perform such other duties as are incident to the office of secretary.

## ARTICLE VI
## COMMITTEES

6.1.   **CREATION AND APPOINTMENT.** The Community Board may, as it deems necessary or desirable, form standing or other committees to assist in fulfilling its duties. Committees may include: executive, finance, planning, community needs, medical affairs, quality management, safety and such other committees as the Community Board may deem necessary or desirable from time to time. All committee members shall be appointed by the Chair of the Community Board after consultation with the Local Executive, and shall serve for a one (1) year term. Committee members may be appointed to consecutive terms without limitation. Each committee shall have the number of members as determined by the Chair, provided at least two (2) Directors serve on each committee. Committee members may include persons who are not Directors. The chair of each committee shall be appointed by the Chair of the Community Board from among the Directors on the committee.

6.2.   **MEETINGS.** Committees shall meet as often as is necessary to perform their duties. Notice of a meeting may be given at a time and in a manner reasonably designed to inform committee members of the time and place of the meeting. Meetings may be called by the committee Chair, the Chair of the Community Board, the Local Executive or a majority of the committee's members. Attendance by a majority of the committee's members shall constitute a quorum.

## ARTICLE VII
## CONFLICT OF INTEREST

All Community Board and committee members shall avoid any conflict between their respective individual interests and the interests of Providence and the Ministries (collectively

PHS_BK-000682

referred to as "Providence") in any and all actions taken by them in their respective capacities as Community Board and/or committee members. Any Community Board or committee member having a direct interest which may result in personal benefit, in any transaction, shall make a prompt and full disclosure of his or her interest to the Community Board and/or the committee involved prior to any action taken on the transaction. Such disclosure shall include any relevant information known to the person having a potential conflict of interest which may reasonably be construed to be adverse to the interests of Providence. The Community Board (excluding those members with the potential conflict) shall determine, by majority vote, whether the disclosure shows that a conflict of interest exists or can be construed to exist, in which case, such person shall not vote on, nor use his or her personal influence, nor participate in any discussions or deliberations with respect to the transaction. Community Board members shall conform to applicable Providence policies regarding Conflict of Interest and shall annually submit a Conflict of Interest Statement in accordance with such Conflict of Interest policy.

## ARTICLE VIII
## INDEMNIFICATION

Providence will defend and indemnify every person who is or was a member of the Community Board or any Community Board committee against any and all liability and reasonable expenses (including attorney's fees, costs, judgments, fines and amounts paid in settlement) that may be incurred by such member in connection with or resulting from any claim, action, suit, or proceeding, whether civil, criminal, administrative or investigative, by reason of the fact that such person was a Community Board or committee member, if such member acted in good faith and in a manner such member reasonably believed to be in or not opposed to the best interests of Providence and, with respect to any criminal action or proceeding, had no reasonable cause to believe that the conduct was unlawful. Expenses incurred in defending a civil or criminal action, suit or proceeding may be paid in advance of the final disposition of such action, suit or proceeding upon receipt of a written undertaking by or on behalf of the Community Board or committee member to repay such amount if it shall ultimately be determined that such member has not met the standard of conduct necessary for indemnification as provided in these Bylaws.

## ARTICLE IX
## AMENDMENTS

These Bylaws may be amended by Providence on its own initiative or a two-thirds vote of the members of the Community Board present at a meeting at which a quorum has been declared and notice given as provided in these Bylaws. No amendment shall be effective until approved in writing by the Providence Board, which approval shall be filed with the minutes of the meeting at which the amendment was adopted.

\*     \*     \*     \*     \*

PHS_BK-000683

Dated this _____ day of _____, _____.

_____
Chair of the Board of Directors

**ATTEST:**

_____
Secretary of the Corporation

Exhibit A:  List of Ministries
Exhibit B:  Selection Criteria

PHS_BK-000684

## EXHIBIT A
### (List of Providence Health & Services Ministries)

**ALASKA**
Providence Alaska Medical Center (Anchorage)
Providence Extended Care Center (Anchorage)
Providence Kodiak Island Medical Center (Kodiak)
Providence Seward Medical & Care Center (Seward)
Providence Valdez Medical Center (Valdez)
Providence Horizon House (Anchorage)
Providence Home Health Care (Anchorage)

**CALIFORNIA**
Providence Saint Joseph Medical Center (Burbank)
Providence Holy Cross Medical Center (Mission Hills)
Providence St. Elizabeth Care Center (North Hollywood)
Providence House (Oakland)
Providence High School (Burbank)
Providence Little Company of Mary Medical Center Torrance (Torrance)
Providence Little Company of Mary Medical Center San Pedro Hospital (San Pedro)
Providence Medical Institute (Torrance)
Providence Little Company of Mary Del Amo Diagnostic Center (Torrance)
Providence TrinityCare Hospice (Torrance)
Providence Little Company of Mary Sub-Acute Care Center (Torrance)
Providence Little Company of Mary Transitional Care Center (Torrance)
Providence Little Company of Mary Home Health (Torrance)
Providence Home Care (Burbank)
Providence Tarzana Medical Center (Tarzana)

**MONTANA**
St. Patrick Hospital and Health Sciences Center (Missoula)
St. Joseph Retirement Community (Missoula)
St. Thomas Child & Family Center (Great Falls)
University of Great Falls (Great Falls)

PHS_BK-000685

**OREGON**
Providence Newberg Medical Center (Newberg)
Providence Seaside Hospital & Extended Care (Seaside)
Providence Benedictine Nursing Center & Home Health (Mount Angel)
Providence Benedictine Orchard House and Garden Homes (Mount Angel)
Providence Portland Medical Center (Portland)
Providence St. Vincent Medical Center (Portland)
Providence Milwaukie Hospital (Milwaukie)
Providence Child Center (Portland)
Providence Hood River Memorial Hospital (Hood River)
Providence Medford Medical Center & Providence Home Care (Medford)
Providence Health Plans (Beaverton)
Providence Brookside Manor (Hood River)
Providence Dethman Manor (Hood River)
Providence Down Manor (Hood River)
Providence ElderPlace (Portland)
Providence Home Services (Portland)
Providence Physician Division (Portland)
Providence Medical Group (Portland)
Providence House (Portland)
Emilie House (Portland)

**WASHINGTON**
Providence St. Mary Medical Center (Walla Walla)
Providence Sacred Heart Medical Center & Children's Hospital (Spokane)
Providence Holy Family Hospital (Spokane)
Providence Holy Family Adult Day Centers (Spokane)
Providence St. Joseph's Hospital (Chewelah)
Providence Mount Carmel Hospital (Colville)
Providence VNA Home Health Care Services (Spokane)
Providence Emilie Court (Spokane)
Providence DominiCare (Chewelah)
Providence Health Care Ventures, Inc. (Spokane)
Providence Physician Services (Spokane)
Providence Mount St. Vincent and St. Joseph Residence (Seattle)
Providence Marianwood (Issaquah)
Providence Hospice of Seattle (Seattle)
Providence Infusion and Pharmacy Services (Renton)
Providence Home Services (Renton)
Heritage House at the Market (Seattle)
Providence St. Elizabeth House (Seattle)
Providence Gamelin House (Seattle)
Providence Peter Claver House (Seattle)
Providence Vincent House (Seattle)
Providence ElderPlace-Seattle (Seattle)

PHS_BK-000686

Providence Mother Joseph Care Center (Olympia)
Providence St. Francis House (Olympia)
Providence Place (Chehalis)
Providence Blanchet House (Centralia)
Providence Rossi House (Centralia)
Providence House (Yakima)
Providence Regional Medical Center Everett (Everett)
Providence St. Peter Hospital (Olympia)
Providence Centralia Hospital (Centralia)
Providence Hospice and Home Care of Snohomish County (Everett)
Providence Physician Group (Everett)
Providence SoundHomeCare and Hospice (Olympia)

G:\Legal\WORD\BYLAWS\EXHIBIT A-Revised-3.doc   Version 1/7/09

PHS_BK-000687

**EXHIBIT B**

**COMMUNITY MINISTRY BOARD SELECTION CRITERIA**

The specific skill set of the local community board will reflect their delegated authority for oversight of quality, patient safety and medical staff credentialing, as well as an understanding of the delivery and financing of healthcare, and an appreciation of the needs of the local community. The skills required on the local community board will vary from time to time based on the strategic focus and requirements of the service area.

## IT IS EXPECTED THAT EACH MEMBER OF THE LOCAL COMMUNITY BOARD WILL:

1.   Be a willing partner in ministry, supporting Providence Health & Services' ("Providence") mission and core values;

2.   Have a spirituality compatible with Providence;

3.   Accept and understand his or her role in carrying out the purposes of the Service Area and the health care mission of Catholic health ministries;

4.   Accept and follow the requirements of the documents that govern the Service Area, including their articles and bylaws as well as the medical-moral teachings of the Church (such as the Ethical and Religious Directives for Catholic Health Care Services) as promulgated from time to time by the National Conference of Catholic Bishops (or any successor organization) and as interpreted by the local Ordinary;

5.   Energetically support the vision, mission, values and policies of Providence;

6.   Exercise his or her responsibilities in accordance with the duties of Oversight, Care and Loyalty;

7.   Provide overall advice and input on the strategic direction and financial performance of the services area;

8.   Represent the views of the broader community in service area decision making;

9.   Understand and support the role of Providence and the role of the Service Area within it, including their interdependence and the need to maximize and improve the whole of Providence, at times by subordinating the needs of individual Service Areas for the good of the system; and

10.   Understand and be willing to undertake the responsibilities of a member of the local community board.

PHS_BK-000688

## CORE COMPETENCIES

### Commitment to the Mission and Affairs of the Organization

Support the Service Area by serving on committees of the Community Board;

1.      Participate in overseeing effective governance of the local community board, including recruitment, selection, and orientation of new members;

2.      Understand the difference in the roles of the local community board and the system, including system management's oversight and supervisory roles regarding the local organizations;

3.      Demonstrate an ability to integrate mission into decision making;

4.      Understand and appreciate Catholic tradition, social teachings and the Ethical and Religious Directives for Catholic Healthcare;

5.      Have a commitment to justice for persons who are poor and underserved; and

6.      Help to promote and maintain positive external relationships with the community, local business, government, funding sources, and other health-related organizations.

### STRATEGIC/SYSTEMS THINKING

1.      Understand and accept a complex, multi-location, multi-product health care system;

2.      Understand and support the role of the local community board within Providence and the needs of the system overall;

3.      Have the ability to anticipate system-wide consequences to local decisions.

### UNDERSTAND HEALTHCARE QUALITY AND PATIENT SAFETY ISSUES

1.      Actively engage in oversight to improve the Service Area's outcomes for patient safety and quality;

2.      Review and understand national practice standards and reports

3.      Conduct effective oversight of medical staff credentialing.

### INTERPERSONAL/GROUP SKILLS

1.      Ability to relate well with others and, when not in agreement, to engage in productive conversations;

PHS_BK-000689

2.      Ability to mediate various stakeholder interests for the common good;

3.      Willingness to accept and understand differing points of view; and

4.      Understand the difference between the roles of management and governance and respect both.

**Personal Integrity**

1.      Have mature, moral judgment;

2.      Be accountable;

3.      Have the ability to seek clarity and to accept uncertainty; and

4.      Be willing to contribute his or her own expertise.

**Commitment to Learning and Change**

1.      Willing to develop new skills and expertise in new areas;

2.      Willing to test and apply new concepts and assess risk;

3.      Receptive to new ideas and approaches; and

4.      Willing to understand and accept that certain policies and services will be decided by Providence.

PHS_BK-000690

MISC

November 16, 1990

MEMO

TO:   CORPORATIONS DIVISON STAFF
FROM: HELEN MORRIS, ADMINISTRATOR

The attached certificate was prepared for infor-
mational purposes - to explain why, prior to
my certificate, our records indicated that this
corporation filed articles in 1895 and, after
Nov. 20, 1987 showed the incorporation date as
1859.
If you prepare certified copies - certify to the
page from the Washington Territorial Legislature
journal attesting to the creation of the corp-
oration on Jan. 28, 1859. (Do not certify to
my explanatory certificate.)

Helen Morris



tions Division
Republic Bldg.
E. Union
, WA 98504
) (206) 753-7115
t (206) 753-7120

ARY
TATE

PHS_BK-000691

December 16, 1987

On January 28, 1859 the corporation was created by the legislature of the Territory of Washington.  On July 1, 1895 restated articles were filed.  An adjustment was put through on December 16, 1987 to accurately reflect the date of incorporation.

tls

PHS_BK-000692

# Exhibit H

FILED
SECRETARY OF STATE
SAM REED

DECEMBER. 4, 2009

STATE OF WASHINGTON

12/04/09 1630265-
003
$60.00 K #108565
uid:1807015

**RESTATED ARTICLES OF INCORPORATION**
**OF**
**PROVIDENCE HEALTH & SERVICES—WASHINGTON**

Pursuant to the provisions of RCW 24.03.183 of the Washington Nonprofit Corporation Law, the undersigned corporation adopts the following Restated Articles of Incorporation:

## ARTICLE I
## NAME

The name of the corporation shall be Providence Health & Services—Washington, (the "Corporation").

## ARTICLE II
## DURATION

The Corporation shall have perpetual existence.

## ARTICLE III
## PURPOSES

The purposes for which the Corporation has been formed are as follows:

3.1     To establish, operate, manage and maintain for charitable purposes, hospitals, nursing homes, and other health care, educational, and social service facilities and programs designed to meet the health, educational and social needs of all people;

3.2     To provide scientific research and educational, charitable and such other activities, services and programs related to its health care, educational and social service facilities and services;

3.3     To engage in other charitable works which are consistent with the objectives of the Corporation and the mission and values of Providence Health & Services and guided by the tradition and charism of the Sisters of Providence, as appropriate; and

3.4     To do any and all other things in furtherance of these purposes which are consistent with the laws of the State of Washington, the Articles and Bylaws of Providence Health & Services as well as the teachings and laws of the Roman Catholic Church and the *Ethical and Religious Directives for Catholic Health Care Services.*

PHS_BK-000636

## ARTICLE IV
## TAX EXEMPT STATUS

The Corporation is organized and is to be operated exclusively for charitable, religious, educational and scientific purposes. No part of the net earnings of the Corporation shall inure to the benefit of, or be distributed to, the Directors, Officers or other private persons, except that the Corporation is authorized and empowered to pay reasonable compensation for services rendered and to make payments and distributions in furtherance of its exempt purposes. No substantial part of the activities of the Corporation shall be the carrying on of propaganda, or otherwise attempting to influence legislation, and the Corporation shall not participate in, or intervene in (including the publication or distribution of statements) any political campaign on behalf of or in opposition to any candidate for public office. The Corporation shall not carry on any other activities not permitted to be carried on (a) by a corporation exempt from Federal income tax under Section 501(c)(3) of the Internal Revenue Code of 1986, as amended (or the corresponding provision of any future United States Internal Revenue Law) (the "Code") or (b) by a corporation, contributions to which are deductible under Section 170(c)(2) of the Code (or the corresponding provision of any future United States Internal Revenue Law).

## ARTICLE V
## MEMBER

The sole Member of the Corporation is Providence Health & Services ("Providence"), a Washington nonprofit corporation.

## ARTICLE VI
## AMENDMENTS

The power to alter, amend or repeal the Articles of Incorporation and Bylaws of the Corporation shall be vested exclusively in the Member of the Corporation.

## ARTICLE VII
## DISSOLUTION

Upon dissolution of the Corporation, the Board of Directors shall, after paying or making provision for the payment of all of the liabilities of the Corporation, dispose of all of the assets of the Corporation to Providence, its sole corporate Member, or to its designee, provided that such recipient entity is organized and operated exclusively for charitable, educational, religious or scientific purposes, and qualifies as an exempt organization under Section 501(c)(3) of the Internal Revenue Code ("Code")(or the corresponding provision of any future United States Internal Revenue Law). If, at the time of dissolution, Providence is not in existence, is not an exempt organization under the Code, or makes no such designation, the Board of Directors shall dispose of all the corporate assets to Providence Ministries or its designee, provided that such recipient entity is still in existence and organized and operated exclusively for charitable, educational, religious or scientific purposes, and qualifies as an exempt organization under the Code. If, at the time of dissolution, Providence Ministries is not in existence, is not an exempt organization under the Code, or makes no such designation, the Board of Directors shall dispose

PHS_BK-000637

of all the corporate assets to any other organization(s) selected by the Sisters of Providence, General Administration, Montreal, provided that each such recipient entity is organized and operated exclusively for charitable, educational, religious or scientific purposes and qualifies as an exempt organization under the Code.

**ARTICLE VIII**
**RESTATED ARTICLES**

These Restated Articles of Incorporation correctly set forth without change the provisions of the Articles of Incorporation of the Corporation as amended and these Restated Articles of Incorporation supersede the original Articles of Incorporation and all amendments thereto.

\* \* \*

The foregoing Restated Articles of Incorporation of Providence Health & Services — Washington were adopted by its Member on  9/15/09  , to be effective at 11:59 pm on December 31, 2009.

IN WITNESS WHEREOF, the undersigned Secretary of the above named corporation has executed these Restated Articles of Incorporation.

Secretary

PHS_BK-000638

1   custodian of the personnel files and employee records that PSHCH maintains in the ordinary

2   course of its business.

3         3.      PSHCH is part of Providence Health and Services – Washington ("PHS"), a

4   health care ministry sponsored by the Vatican. PHS is a faith based organization. Attached

5   hereto as **Exhibit A** is a true and correct copy of PHS's Mission Statement and Core Values.

6   The organization that is now PHS was founded by the Sisters of Providence. The Sisters of

7   Providence are an order of nuns that began in Montreal, Canada. The Sisters of Providence

    are overseen by the Catholic Diocese in Montreal. Prior to January 1, 2010, PHS reported to

8   the Montreal Diocese. It provided its budget to the Montreal Diocese for approval and

9   consulted the Montreal Diocese on all major decisions. As of January 1, 2010, the Sisters of

10  Providence transferred its sponsorship of PHS to a new entity by the name of Providence

11  Ministries. Providence Ministries is composed of five individual members (called Sponsors)

12  who oversee and select the PHS board of directors. Sponsors are required to be Catholics in

    good standing and are selected by the Sisters of Providence. Providence Ministries reports to

13  the Vatican. It is required to file a yearly report with the Vatican. The entities that PHS

14  operates work with the Diocese in their jurisdictions.

15        4.      PSHCH provides home health and hospice care services for patients in assisted

16  living facilities and private homes. PSHCH is divided into two departments – Home Health

17  and Hospice. The Hospice division serves patients who have a life expectancy of less than six

18  months and elect to receive palliative care. Hospice care focuses on managing physical

19  symptoms and decreasing pain, while also providing emotional and spiritual support to

20  patients and their families. Each patient is cared for by a team that consists of a combination

    of registered nurses, associated physicians, social workers, a chaplain, bereavement

21  counselors, home health aides, and other counselors. Medicare, Medicaid, and private

22  insurance cover the cost of Hospice care for patients who meet specific criteria.

23  DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
    (10-CV-05292 BHS) — 2

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

5.      PSHCH is committed to furthering the mission of PHS in caring for its patients. Its employees receive information and training regarding its mission statement and core values, which have religious components. Additionally, Hospice chaplains provide religious and emotional counseling to hospice patients. PSHCH recognizes that the religious, spiritual, and social needs of patients during the final months of life are often just as important has their medical needs are at this time.

6.      PSHCH currently employs 79 people who work in hospice, 23 of which are Case Managers. The average age of hospice employees is 50 years old and the average age of Case Managers is 53 years old.

7.      Attached hereto as **Exhibit B** is a true and correct copy of a personnel action request form from Ms. Knodel's personnel file.

8.      Attached hereto as **Exhibit C** is a true and correct copy of a doctor's note from Ms. Knodel's personnel file.

9.      Attached hereto as **Exhibit D** is a true and correct copy of a Leave of Absence Statement from Ms. Knodel's personnel file. Attached hereto as **Exhibit E** is a true and correct copy of the Certification of Health Care Provider Form, dated November 2008, from Ms. Knodel's personnel file.

10.     Attached hereto as **Exhibit F** is a true and correct copy of a doctor's note from her personnel file, releasing Ms. Knodel to work after her surgery in November 2008.

11.     As part of its regular ebb and flow of employees, PSHCH has hired other nurses since Ms. Knodel's employment was terminated, but Ms. Knodel was not replaced by any particular person.

12.     Attached hereto as **Exhibit G** is a true and correct copy of the Restated Bylaws of PHS, effective December 31, 2009.

DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(10-CV-05292 BHS) — 3

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

13.    Attached hereto as **Exhibit H** is a true and correct copy of the Restated Articles of Incorporation of PHS, effective December 31, 2009.

I declare under penalty of perjury under the laws of the State of Washington and the United States of America that the foregoing is true and correct.

Executed at Olympia, Washington, June <u>14</u>, 2011.

By  _____
Cheryl Richards

DECLARATION OF CHERYL RICHARDS IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(10-CV-05292 BHS) — 4

Davis Wright Tremaine LLP
LAW OFFICES
Suite 2200 · 1201 Third Avenue
Seattle, Washington 98101-3045
(206) 622-3150 · Fax: (206) 757-7700

DWT 17365772v1 0016924-000146