UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BEVERLY J. KNODEL,

    Plaintiff,

  v.

PROVIDENCE HEALTH AND
SERVICES, d/b/a PROVIDENCE
SOUNDHOMECARE AND HOSPICE,

    Defendant.

CASE NO. C10-5292BHS

ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT
AND DENYING PLAINTIFF'S
MOTION TO STRIKE

This matter comes before the Court on Defendant's ("Providence") motion for summary judgment (Dkt. 20) and Plaintiff's ("Knodel") motion to strike certain testimony. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants in part and denies in part Providence's motion for summary judgment and denies Knodel's motion to strike for the reasons provided herein.

**I. PROCEDURAL HISTORY**

On June 15, 2011, Providence moved for summary judgment on Knodel's claims. Dkt. 20. On July 5, 2011, Knodel responded in opposition to Providence's motion for summary judgment and moved therein to strike certain statements relied upon by Providence in supporting its summary judgment motion. Dkt. 27. On July 8, 2011, Providence replied.

ORDER - 1

## II. FACTUAL BACKGROUND

This is an employment case wherein Knodel alleges (1) age discrimination under the Employment Act, 29 U.S.C. § 623 and Washington Law Against Discrimination ("WLAD"), RCW 49.60, *et seq.*; (2) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.,* and WLAD; and (3) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*. Complaint (Dkt. 1) ¶¶ 3.1-3.3.

Knodel is a registered nurse. Complaint ¶ 1. Knodel worked for Providence for nearly 40 years, and in May 2006 at age 62 began working for Providence's hospice unit. *Id*. The hospice division provides end of life care. The average hospice employee is 50 years of age and the average nurse case manager is 53 years of age. Knodel was terminated at age 65 and alleges she was replaced by a person who is 50 years old. Dkt. 21 (Providence's chart of undisputed facts) (citing Declaration of Cheryl Richards (Richards Decl.) ¶ 6). Providence employs more than 100 people but less than 500 people. Complaint ¶ 2.2; *see also* Richards Decl. ¶ 6 (Providence's hospice unit employs 79 people, 23 of whom are case managers). It is undisputed that Providence is a religious based, non-profit organization providing health care. Providence is divided into two divisions: health and hospice. *See e.g.*, Richards Decl., Ex. A.

When Knodel began working as a case manager in the hospice unit her supervisor was Steve Williams. Deposition of Beverly Knodel (Knodel Dep) 69:14-16. In January 2009, the hospice unit hired Nancy Kelly ("Kelly") as a clinical manager. Deposition of Nancy Kelly ("Kelly Dep.") 5:12-20. When Kelly began, she was the only clinical manager and Knodel began reporting to Kelly. *See id*. In February 2009, Susan Botka ("Botka") was hired as a second clinical manager. Declaration of Susan Botka ("Botka Dep.") 6:15-19. Botka and Kelly divided the staff that previously only reported to Kelly. Kelly Dep. 7:21-8:4. In that division, Knodel started reporting to Botka. Botka Dep. 10:11-13.

Next, Rena Graves ("Graves") was hired on as the third clinical manager, and she became Knodel's direct supervisor. Knodel Dep. 70:13-15. Botka assisted Graves in getting up to speed on her direct reports, i.e., familiarizing them with her direct reports' employee files. Botka Dep. 10:1-3. Graves was Knodel's direct supervisor at the time Knodel was terminated from employment with Providence. *See* Knodel Dep. 70:16-18.

Shortly after beginning work for the hospice unit, Knodel suffered a brain aneurysm and later was diagnosed and treated for breast cancer. *Id*. ¶ 2.3. In May of 2008, Knodel requested that her case load be limited due to fatigue, which was a result of her craniotomy for the ruptured aneurysm. *Id*. ¶ 2.4. In 2008, Knodel underwent surgery for breast cancer and, due to complications, Knodel had to wait until January of 2009 to start her chemotherapy treatment. *Id*. In February of 2009, Knodel requested an accommodation due to fatigue caused by the chemotherapy treatments and she requested intermittent FMLA leave for her health condition and associated fatigue. *Id*.

While Knodel received some time off after her brain aneurysm and then received some accommodations upon returning to work, she alleges that Providence denied some of her requests to use FMLA associated with her breast cancer treatment. *Compare, e.g.,* Knodel Dep. 147:171-148-14 with, *e.g.*, Complaint. ¶ 2.5; *but see* Knodel Dep 152:20-153:3, 160:20-22 (Knodel affirming that she received all FMLA leave requested and that she received every accommodation she asked for, except for one relating to doing patient charts in her work vehicle; Knodel admits that the hospice did not require charting in her vehicle but did require charting soon after seeing a patient, at home or in one's vehicle). Knodel also alleges that beginning in May 2009, Knodel's managers wrote her up for "issues that either were not violations of policy, misrepresented the facts or for which other employees were not reprimanded." *Id.* ¶ 2.6. Knodel further alleges that on June 18, 2009, she was informed that if she did not quit she would be fired; Knodel was terminated from employment with Providence on June 26, 2009. *Id*.

ORDER - 3

Providence contends that Knodel was terminated for valid reasons. Providence maintains that Knodel was ultimately terminated for failure to meet expectations in a certain patient's care. Specifically, Providence claims that Knodel failed to properly document the patient's care, failed to provide adequate pain management, and failed to inform Providence about the fact that the patient who had a bone-compromising cancer was seeing a chiropractor, which can be dangerous for such a patient. *See, e.g.,* Dkt. 21 ¶¶ 110-115. Botka and Graves assert that they decided Knodel's conduct was putting the hospice unit at risk and that she needed to be terminated as an employee. Additionally, Botka and Graves reported Knodel to the Washington State Nursing Commission (the "WSNC"); however, the WSNC did not pursue the matter. *See id.* ¶ 122.

## III. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.  Providence's Summary Judgment Motion**

Providence moves for summary judgment as to each of Knodel's claims. Dkt. 20.

**1.  WLAD**

Because Providence and, more specifically, its hospice unit is a non-profit religious organization, it is expressly exempt from the provisions of WLAD. *Salina v. Providence Hospice of Seattle*, 226 Fed. Appx. 653 (9th Cir. 2007) (citing RCW 49.60.040(4)); *see also* RCW 49.60.040(3) (WLAD applies to "employers" but does not include religious or sectarian non-profit organizations in its definition of "employer"); *see also Erdman v. Chapel Hill Presbyterian Church*, 156 Wn. App. 827, 848-50 (2010) (holding that WLAD does not apply to non-profit religious employers).

Alternatively, Plaintiff argues that Providence should be estopped from asserting that WLAD does not apply because, although it is a religious non-profit, its EEO policy provides that "[t]he Employer and the Union agree not to discriminate or condone

ORDER - 5

harrassment in any manner in conformance *with applicable* federal and state laws . . . ." Dkt. 27. However, this argument is unavailing because WLAD is not applicable, and Providence only agreed to conform with "applicable" laws. *See, e.g., Erdman,* 156 Wn. App. at 848-850. Therefore, Knodel's estoppel argument fails because she cannot establish that she relied on something that, in fact, was not promised. *See, e.g., Corbit v. J.I. Case Co.*, 70 Wn. 2d 522, 539 (1967) (setting out elements for promissory estoppel).[1]

Therefore, the Court grants Providence's motion for summary judgment on this issue.

### 2. Disability Discrimination

Knodel claims that she suffered an adverse employment action (termination) due to being discriminated against for being disabled under the Americans with Disabilities Act ("ADA") and for seeking FMLA leave. In opposition, Providence argues that Knodel's ADA claim must fail because she was either not disabled and/or not subjected to disparate treatment. Additionally, Providence contends that Knodel received all requested leave and accommodations under FMLA.

The ADA prohibits an employer from discriminating "against a qualified individual with a disability because of the disability." *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1480 (9th Cir. 1996) (quoting 42 U.S.C. § 12112(a)). To establish a claim under the ADA, the plaintiff must show that he: (1) is a disabled person within the meaning of the ADA, (2) is qualified with or without a reasonable accommodation to perform the essential functions of the job, and (3) suffered an adverse employment action because of the disability. *Id.* at 1481. Once a plaintiff has established a prima facie case, the burden of persuasion then shifts to the defendant to articulate a legitimate, non-discriminatory

---

[1] The elements of promissory estoppel are "(1) a promise which (2) the promissor should reasonably expect to cause the promisee to change his position and (3) which does cause the promisee to change his position (4) justifiably relying upon the promise, in such a manner that (5) injustice can be avoided only by enforcement of the promise."

ORDER - 6

reason for its adverse employment action. *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the defendant provides such legitimate reasons, the burden of persuasion reverts to the plaintiff to provide evidence that the reason(s) given by the defendant are merely a pretext for discrimination. *Burdine*, 450 U.S. at 256. In the context of a motion for summary judgment, the plaintiff must raise a genuine issue of material fact that the defendant's legitimate, non-discriminatory reason for an adverse employment action was pretextual. *Snead v. Metro. Prop. & Cas. Co.*, 237 F.3d 1080, 1094 (9th Cir. 2001). Additionally, Under the FMLA, it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or attempt to exercise any [FMLA rights]." 29 U.S.C. § 2615(a)(1). In order to survive summary judgment on her FMLA claims, Knodel must assert a genuine issue of material fact with respect to whether her FMLA leave constituted a negative factor in Providence's decision to terminate her. *Bachelder v. Am. West Airlines, Inc.*, 259 F.3d 1112, 1122-25 (9th Cir. 2001).

The parties dispute whether Knodel was disabled under the ADA. The ADA provides that a disability, with respect to an individual, includes a physical or mental impairment that substantially limits one or more major life activities, such as working. 42 U.S.C. § 12102. Providence argues that Knodel's only claimed disability is fatigue, which resulted from her aneurysm and breast cancer. Dkt. 20 at 12. Providence further argues that Knodel admitted that, during her employment with the hospice unit, she did not consider herself to be disabled. *Id.* (citing Knodel Dep. 163:21-24).

However, for purposes of summary judgment, the Court must reject Providence's interpretation of Knodel's relevant deposition testimony:

> Q: So during the time that you worked at Hospice, did you – did you ever consider yourself to be disabled?
> A: No. *Well, I guess, yes, I did*. But I don't really think I was so disabled that I couldn't make myself work.
> Q: What disability did you consider yourself to have?

ORDER - 7

A: Just the fatigue . . . .

Knodel Dep. 163:1-8 (emphasis added). Here, taking the facts in the light most favorable to Knodel, she does express a belief that she was disabled. *See also* Deposition of Erin Kershisnik, M.D. ("Kershisnik Dep., Dkt. 26, Ex. 1) at 5:24-10:16 (describing impact of Knodel's fatigue on her ability to work). Based on the foregoing and the remaining record, Knodel has supplied competent evidence that raises a material question of fact as to whether she was disabled under the meaning of the ADA, which satisfies the first factor set out above. It is also arguable that Providence regarded Knodel as disabled given that it filed a formal complaint to the WSNC claiming that Knodel "lacks mental capcity to practice nursing." Further, Providence issued a letter to the EEOC (Equal Employment Opportunity Commission) in response to its request for a position statement on Knodel's allegations, stating in pertinent part that "[Knodel] was not discharged due to her age, *disability* or in retaliation." Dkt. 26-1 (emphasis added).

As to the second element, there is no material dispute as to whether Knodel was qualified and able to carry out her job functions with or without an accommodation. Indeed, Knodel felt she could perform her job so long as she got enough rest and Providence claims it terminated Knodel because she did not perform her job as expected. Providence asserts that it terminated Knodel not because of her disability but simply because she did not follow protocol and policies and that put the hospice unit at an untenable risk. As such, Knodel satisfies the second element for purposes of summary judgment.

As to the third element, Knodel was terminated, which is an adverse employment action. To tie this adverse employment action to her disability, Knodel points to the response she received when requesting accommodation for her disability. Knodel does not provide evidence of any particular request for leave or otherwise under FMLA that was denied. Instead, she contends she was subjected to ridicule for making the requests

and that Botka, Kelly, Richards, and Catherine Koziar, director of the hospice unit, began creating a record of poor performance on the part of Knodel in order to fire her. *See, e.g.*, Declaration of Beverly J. Knodel (Knodel Decl.) ¶ 7. To support this contention, Knodel points to her file which contains records of all the warnings she received about her work performance that follow her FMLA leave requests. Knodel has also provided the Court with records of her good performance reviews that predate her claimed disability and no evidence exists in the record that she was failing to perform her duties before her disability began. *See id.* ¶ 13.

Knodel has also provided copies of email exchanges between the managers at the hospice unit that could be construed as a record created to justify her firing. *See, e.g.,* Dkt. 26-1 at 27, Ex. 14 at 1 (email thread between Botka, Richards, and Graves that contemplates adding a suspension to a warning that would justify a later termination and "make [Knodel] realize [they] are serious, and give [Knodel] time to think about the resignation.") This email could be interpreted by a jury to support Knodel's contention that the performance evaluations were trumped up to set up Knodel's discharge. This email also tends to corroborate Knodel's claim that Richards told Knodel that "she should either quit or be fired." Knodel Decl. ¶ 28. Additionally, there is at least some evidence that Kelly was indirectly hostile toward Knodel's leave requests and that Koziar was directly hostile to Knodel regarding her FMLA requests. *See* Dkt. 21 at 87 ("And I remember [Koziar] coming to me and saying in front of God and everybody and a whole bunch of employer – employers – employees that – that [they] wouldn't give you a lower patient load").

Therefore, the facts, when taken in the light most favorable to Knodel, establish Knodel's prima facie case of disability discrimination under the ADA.

Providence argues that, even if Knodel "could present a prima facie case of disability discrimination, the burden would shift to [it] 'to produce evidence that the

ORDER - 9

employment action was based on legitimate, nondiscriminatory reasons.'" Dkt. 20 at 13 (collecting cases). Even assuming an impairment, real or perceived, the ADA does not immunize employees from terminations based on misconduct in the workplace. *Collings v. Longview Fibre Co.*, 63 F.3d 828, 831 (9th Cir. 1995).

Providence asserts that Knodel was fired because she failed to provide proper care to a patient and put that patient and Providence at risk in an unacceptable manner. This is a legitimate, nondiscriminatory reason for terminating Knodel. Having provided such a reason, the burden then shifts to Knodel to create a material issue of fact that Providence's articulated explanation for discharge was a mere pretext for disability discrimination. See *Collings*, 63 F.3d at 833 (stating that, if a plaintiff cannot show that the defendant's explanation for the discharge was a pretext for disability discrimination, then the plaintiff has not presented a triable issue under the ADA). Nonetheless, "the ADA does not require that a discriminatory impetus have been the *only* motive for an adverse employment action." *Dark v. Curry County*, 451 F.3d 1078, 1084-85 (9th Cir. 2006) (emphasis in original). "Rather, the ADA outlaws adverse employment actions motivated, *even in part*, by animus based on a plaintiff's disability or request for an accommodation–a *motivating factor* standard." *Id.* (internal quotation and citation omitted; emphases in original).

Here, Knodel has pointed to facts that could be believed to establish that Providence, specifically Knodel's managers, trumped up a record of poor performance in an effort to support her termination and has corroborated her position by supplying, among other things, emails written by and between the managers that could suggest they were laying the groundwork to justify firing Knodel and avoid exposing that the discharge was based on an impermissible basis: Knodel's claimed disability.

Therefore, based on the record before the Court, Knodel has met her burden to establish pretext and thereby defeat Providence's motion for summary judgment. The

ORDER - 10

parties should not confuse this ruling for a statement on the strength of Knodel's case. The Court is not suggesting that Knodel's case is a strong one; rather, it is simply one in which a question of fact exists on this issue, and Knodel is entitled to defeat Defendants' summary judgment motion for that reason.

### 3. Age Discrimination

Knodel asserts age discrimination under the Age Discrimination in Employment Act ("ADEA"). To succeed in such a claim, a plaintiff must establish that age was the "but for" cause of the challenged action. *Gross v. FBL Fin. Servs. Inc.*, __ U.S. __, 129 S. Ct. 2343, 2352 (2009). In *Gross*, the Court held that the text of the ADEA – which bars an employer from discriminating against any individual "because of such individual's age," 29 U.S.C. § 623(a)(1) – does not authorize a plaintiff to prevail if age was merely "a motivating factor" in the adverse employment decision. 129 S. Ct. at 2350. Relying on the definition of "because of" – which means "by reason of" – the Court concluded that age had to be "the 'reason' that the employer decided to act." *Id.* However, it is noted that *Gross* did not reject the burden shifting analysis of *McDonnel Douglas*, which as discussed above requires a defendant to provide a legitimate nondiscriminatory reason for the challenged action and, if shown, the burden shifts back to a plaintiff to establish pretext.

Here, even assuming Knodel could establish a prima facie case of age discrimination, Knodel has not supplied sufficient competent evidence to establish that Providence's reasoning for terminating her was merely a pretext for the claimed age discrimination. In fact, Knodel's only direct evidence is that she, a 65-year-old employee, was replaced by a 51-year-old employee. While difference in age could be characterized as significant, Knodel supplies no other evidence of an ageist animus. Further, none of the circumstantial evidence in the record supports Knodel's theory regarding age

discrimination.[2] The Court must, therefore, reject Knodel's claim that the same reasons justifying finding a pretext within the context of her disability claim justify finding pretext with respect to her age discrimination claim.

Based on the foregoing, the Court grants summary judgment in favor of Providence on this issue.

### 4. Retaliation Claim

It is unclear whether Knodel has asserted a retaliation claim. Nonetheless, Providence argues that any such claim, though unclear, would fail. Dkt. 20 at 17. Knodel did not respond in opposition to this argument. Under Local Rule 7(d)(2), the Court may deem meritorious arguments for which a party does not file papers in opposition to a motion on summary judgment. Here, the Court is persuaded that Knodel has not supported such a claim with competent evidence, and Knodel has not filed any opposition to that argument.

Therefore, the Court finds Providence's argument on this issue to have merit and grants summary judgment on this issue.

**C.     Knodel's Motion to Strike**

Knodel moves to strike the statements made by a hospice patient's daughter about Knodel's ineffective provision of care as inadmissible hearsay. The Court denies this motion without prejudice; the Court did not rely on these statements in reaching its conclusion herein. Should this matter continue to trial, Knodel may renew the issue in a motion in limine.

---

[2] Even Knodel concedes that the direct evidence of age discrimination is weak and, following that, does not supply any circumstantial evidence other than conjecture to support her position on this issue. Such is insufficient to defeat Providence's summary judgment motion.

**IV. ORDER**

Therefore, it is hereby **ORDERED** that Providence's motion for summary judgment is **GRANTED in part** and **DENIED in part** as discussed herein. Knodel's motion to strike is **DENIED** as discussed herein.

DATED this 15th day of August, 2011.

BENJAMIN H. SETTLE
United States District Judge